## PEOPLE v WHITE

Docket No. 174375. Submitted May 9, 1995, at Detroit. Decided July 21, 1995, at 9:20 A.M.

Carl E. White pleaded guilty in the Genesee Circuit Court, Valdemar L. Washington, J., of the felony of attempted aggravated stalking and of being a third-offense habitual offender. He was sentenced to three years' probation, with the first year to be served in jail, and ordered to pay the victim restitution. The defendant previously had pleaded guilty of the misdemeanor of stalking the same victim in violation of a Grand Blanc Township ordinance that is identical to the statute regarding misdemeanor stalking, MCL 750.411h; MSA 28.643(8). The defendant appealed, alleging violation of the protection against double jeopardy, that the stalking statutes, MCL 750.411h, 750.411i; MSA 28.643(8), 28.643(9), are unconstitutional, and that the order to pay restitution was not supported by the evidence.

The Court of Appeals held:

1. The defendant did not waive his right to raise the double jeopardy and constitutionality claims presented in this appeal as a result of pleading guilty.

2. The double jeopardy challenge is without merit because the defendant was not convicted twice for the same offense. Because the defendant's separate convictions for the misdemeanor of stalking and the felony of stalking arose out of two distinct occurrences or episodes, the felony stalking conviction did not violate double jeopardy principles. In addition, because the defendant pleaded guilty of two separate episodes of stalking, his double jeopardy argument is untenable.

3. The stalking statutes, §§ 411h and 411i, are not unconstitutionally vague. Neither statute is overbroad or impinges on the defendant's right of free speech under the federal or state

REFERENCES

Am Jur 2d, Criminal Law §§ 278, 1055-1058; Evidence §§ 191, 192, 291; Extortion, Blackmail, and Threats §§ 49, 57, 58, 65, 66.

See ALR Index under Double Jeopardy; Presumptions and Burdens of Proof; Restitution and Implied Contracts; Stalking.

constitution. The stalking statutes provide fair notice of the conduct proscribed. The statutes are not void for vagueness.

4. The presumption in § 411i(5) regarding the victim's state of mind is not so unreasonable as to be purely arbitrary. The statute does not violate due process and equal protection guarantees.

5. The restitution order was not supported by documentary evidence. The trial court failed to follow the statutory procedure for determining the amount of restitution to which the victim was entitled. The court erred in failing to consider, pursuant to MCL 780.767(1); MSA 28.1287(767)(1), the financial resources and earning ability of the defendant, the financial needs of the defendant and his dependents, if any, and the loss sustained by the victim. The court was obligated under MCL 780.767(4); MSA 28.1287(767)(4) to conduct a hearing to determine the earning ability of the defendant, the amount of loss sustained by the victim, and the other statutory considerations, once the defendant filed his postsentence motion challenging the restitution award as being arbitrary and unsupported by the evidence. The order of restitution must be vacated and the matter must be remanded for a hearing to determine the appropriate amount of restitution.

Convictions and sentence affirmed; order of restitution vacated; matter remanded for a hearing to determine the appropriate amount of restitution.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — "SAME TRANSACTION" TEST.

Michigan has adopted the "same transaction" test for determining whether two offenses are materially indistinguishable so as to prevent successive prosecutions; the test requires prosecutors to join at one trial all the charges against a defendant arising out of a single criminal act, occurrence, episode, or transaction.

2. CRIMINAL LAW — STALKING — MISDEMEANORS — FELONIES.

Prosecutors may use a defendant's conviction of the misdemeanor of stalking in violation of the statute pertaining thereto or a municipal ordinance paralleling the statute as a vehicle for establishing the felony of aggravated stalking where threats to kill or injure another have been made (MCL 750.411h, 750.411i; MSA 28.643[8], 28.643[9]).

3. CONSTITUTIONAL LAW — CRIMINAL LAW — STALKING.

The statutes that prohibit stalking, a misdemeanor, and aggravated stalking, a felony, are not unconstitutionally vague (MCL 750.411h, 750.411i; MSA 28.643[8], 28.643[9]).

4. Constitutional Law — Due Process — Equal Protection — Presumptions.

The presumption of one fact from evidence of another does not constitute a denial of either due process of law or the equal protection of the law.

5. Constitutional Law — Criminal Law — Stalking — Presumptions — Due Process — Equal Protection.

The rebuttable presumption that a defendant's continuation of a course of conduct that, if proved, is sufficient to support a finding of a violation of the stalking law caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested is not so unreasonable as to be purely arbitrary and does not violate due process or equal protection guarantees (MCL 750.411i[5]; MSA 28.643[9][5]).

6. Criminal Law — Restitution — Hearings.

A trial court must follow the statutory procedure for determining the amount of restitution to order; the court must consider the defendant's financial resources and earning ability, the financial needs of the defendant and the defendant's dependents, and the amount of loss sustained by the victim; the court must conduct a hearing to determine the defendant's earning ability, the amount of loss sustained by the victim, and the other statutory considerations where the defendant files a postsentence motion challenging the restitution award as being arbitrary and unsupported by the evidence (MCL 780.766, 780.767; MSA 28.1287[766], 28.1287[767]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, *Donald A. Kuebler*, Chief, Appeals, Research, and Training, and *Morris R. Kent*, Assistant Prosecuting Attorney, for the people.

*Christopher J. Callahan*, for the defendant on appeal.

Before: Markey, P.J., and MacKenzie and C. H. Stark,* JJ.

Markey, P.J. Pursuant to a plea bargain, defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant pleaded guilty in January 1994 of the felony of attempted aggravated stalking, MCL 750.411i; MSA 28.643(9), and of being a third-offense habitual offender, MCL 769.11; MSA 28.1083. Defendant was sentenced to three years' probation, with the first year to be served in jail. Defendant had previously pleaded guilty, in September 1993, of the misdemeanor of stalking the same victim, a violation of Grand Blanc Township Ordinance 92-01, § I, which apparently mirrors MCL 750.411h; MSA 28.643(8). Defendant challenged his felony conviction in the trial court on the bases that it violated double jeopardy principles, the stalking law was unconstitutional, and the $3,000 restitution that the court ordered defendant to pay was unsupported by documentary evidence. The trial court denied these challenges. Defendant appeals as of right. We affirm with respect to the double jeopardy and constitutionality issues, but we vacate the restitution order and remand for an evidentiary hearing to determine the appropriate amount of restitution, pursuant to MCL 780.767; MSA 28.1287(767) of the Crime Victim's Rights Act.

This case involves a near-tragic romantic relationship. Defendant and his victim began dating in July 1992 and stopped in August 1992 when defendant became violent with the victim. The two started seeing each other again in September and October 1992, but, after defendant pulled a knife on the victim and her twenty-year-old son, her stepson, and their friend on November 1, 1992, the relationship again ended. Defendant then began calling the victim approximately ten times a day. He threatened her and her children. She told him to leave them alone. Defendant also told her that he knew who was coming and going from her house and that she would find him standing over

her when she woke up one morning. She then moved into her father's home. The calls stopped until the end of January 1993, when defendant began calling her one hundred times or more a week at home and at work. The victim lost her job in early December 1992 because of defendant's repeated calls to her and his appearance at her place of work. Apparently, because of defendant, the victim's co-workers were afraid to be at work with her. When the victim obtained a new job in January 1993 working the night shift caring for developmentally disabled adults, defendant continued to call the victim at work. Sometimes he phoned forty or fifty times each night, tying up all the telephone lines and threatening her, her children, and her father.

In May 1993, defendant's physical threats against the victim and her family were unceasing, despite her repeated requests that defendant leave her alone and stop calling her. She changed her telephone number, but he obtained her new number within a week. On June 9, 1993, the victim filed a stalking complaint against defendant with the Flint Police Department based upon defendant's repeated calls to her in May and June 1993 during which he threatened at least ten times to kill her and her children. After filing the complaint, the victim began keeping a log and the telephone company traced the telephone calls coming to her father's home. During an eleven-day period in June, the telephone company traced sixty-seven calls from defendant's home to the victim's father's home.

Defendant continued to call the victim even after he was served with a June 24, 1993, temporary restraining order that forbade him from assaulting, beating, molesting, or wounding the victim. Approximately seventy-five percent of the

calls resulted in defendant's speaking to the victim. He asked her to meet with him so they could work things out. If she met with him, the calls stopped for a day or two, but soon they began all over again. For the remainder of the calls, defendant would just hang up or leave his telephone off the hook so the victim could not make telephone calls from her home or her workplace. She again changed her telephone number in June 1993, but defendant eventually learned her new number and continued calling her.

On July 17, 1993, defendant called the victim at her workplace in Grand Blanc approximately ten times and again threatened to kill her and her children. She reported this episode to the Grand Blanc Police Department. The calls continued into the fall. On one occasion, defendant jumped on the victim's vehicle in an attempt to take her keys. Later, he stopped by her house with alcohol on his breath to ask the victim for a ride.

Finally, a warrant for defendant's arrest was issued on August 6, 1993; the warrant alleged that defendant had committed the felony of aggravated stalking of the victim, MCL 750.411i; MSA 28.643(9), and was based on a complaint issued on June 9, 1993.[1] A supplemental information subsequently was filed alleging defendant's habitual offender status. On August 17, 1993, the Township of Grand Blanc sought a warrant against defendant for the misdemeanor of unlawfully stalking, pursuing, or terrorizing the victim by calling her

_____

[1] The complaint alleged that defendant "did engage in a wilfull [sic] course of conduct involving repeated or continuous harassment of [the victim], the conduct being such that would cause a reasonable person to feel threatened and/or harrassed [sic], said conduct actually causing [the victim] to feel threatened and/or harrassed [sic], and the actions constituting the offense are in violation of a restraining order the defendant has received actual notice of, the course of conduct included the making of 1 or more credible threats against [the victim]; contrary to MCL 750.411i."

place of employment on July 17, 1993, at least ten times and threatening to kill her, her children, and her father, in violation of township ordinance 92-01, § I.[2]

Defendant subsequently pleaded guilty of the misdemeanor stalking charge in the 67th District Court in Genesee County and was sentenced to ninety days in jail. Defendant initially pleaded not guilty, however, with regard to the felony stalking charge and argued that double jeopardy principles precluded the felony prosecution because both stalking charges arose out of the same continuous course of conduct. The trial court denied this challenge and, as part of a plea agreement, defendant eventually pleaded guilty of the felonies of attempted aggravated stalking and of being a third-offense habitual offender. The trial court sentenced defendant to three years of probation with the first year to be served in jail on work release and ordered defendant to pay the victim $3,000 restitution.

After sentencing, defendant again renewed his double jeopardy challenge, argued to the court that the stalking law was unconstitutionally vague, and contested the restitution award. The court again denied these challenges. On appeal, defendant raises these same issues. We affirm the convictions and sentence but vacate with regard to the order of restitution and remand for a hearing to establish the appropriate amount of restitution, pursuant to MCL 780.767; MSA 28.1287(767).

I

We review de novo questions of law including

---

[2] Defendant acknowledged to the trial court that Grand Blanc Township Ordinance 92-01, § I is identical to MCL 750.411h; MSA 28.643(8), the misdemeanor stalking statute enacted in 1992 along with the felony stalking statute, MCL 750.411i; MSA 28.643(9).

double jeopardy issues and the constitutionality of statutes. See *People v Mezy,* 208 Mich App 545, 551; 528 NW2d 783 (1995); *In re Rupert,* 205 Mich App 474, 479; 517 NW2d 794 (1994). Despite pleading guilty, defendant did not waive his right to raise the double jeopardy and constitutionality claims presented to this Court. *People v New,* 427 Mich 482, 492; 398 NW2d 358 (1986). With respect to defendant's double jeopardy challenge, defendant asserts that the misdemeanor stalking conviction precludes a conviction on the felony stalking charge because the former is a lesser included offense of the latter, both arise out of the same transaction, and the court erred in applying the "same elements" test in denying defendant's double jeopardy challenge. While we agree that the "same elements" test is inappropriate for determining questions of double jeopardy, we find defendant's double jeopardy challenge to be without merit.

The double jeopardy provision of the United States Constitution, US Const, Am V, and its counterpart in the Michigan Constitution, Const 1963, art 1, § 15, protect citizens from suffering multiple punishments and successive prosecutions for the same offense. *People v Harding,* 443 Mich 693, 699; 506 NW2d 482 (1993). Defendant's double jeopardy challenge involves the successive prosecutions strand of the Double Jeopardy Clause. See, generally, *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984). The challenge is misplaced, however, because he was not convicted twice for the "same offense."

In *People v White,* 390 Mich 245, 254, 258-259; 212 NW2d 222 (1973), our Supreme Court adopted the "same transaction" test for determining whether two offenses are materially indistinguish-

able so as to prevent successive prosecutions.[3] The same transaction test requires that prosecutors join at one trial all the charges against a defendant arising out of a single criminal act, occurrence, episode, or transaction. *Id.,* citing Justice BRENNAN's concurring opinion in *Ashe v Swenson,* 397 US 436, 453-454; 90 S Ct 1189; 25 L Ed 2d 469 (1970). Because defendant's separate convictions of misdemeanor stalking, a violation of a township ordinance, and felony stalking arose out of two distinct occurrences or episodes, we find that defendant's subsequent felony stalking conviction did not violate double jeopardy principles. Compare *White, supra.*

Specifically, the August 6, 1993, felony stalking warrant specified that on June 9, 1993, defendant repeatedly or continuously harassed the victim in violation of a restraining order and made a credible threat to kill her or inflict physical injury upon her, in violation of MCL 750.411i; MSA 28.643(9). The August 17, 1993, misdemeanor warrant noted, however, that on July 17, 1993, defendant unlawfully stalked, pursued, or terrorized the victim by calling her place of employment at least ten times threatening to kill her, her children, and her father, in violation of the Grand Blanc antistalking ordinance.[4] We reject defendant's unsupported assertion that stalking is a continuous act or offense for which he could receive only one punish-

---

[3] In *White, supra,* our Supreme Court chose the "same transaction" test rather than the "same elements" test set forth in *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932); see also *Harding, supra* at 703-705. The "same elements" test, which is what the trial court purported to apply, states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Harding, supra* at 700, n 8.

[4] Because the record does not contain a copy of the Grand Blanc antistalking ordinance, we will accept defendant's admission that the ordinance mirrors the misdemeanor stalking statute.

ment. See, generally, *People v Jackson*, 153 Mich App 38, 41-50; 394 NW2d 480 (1986), and cases cited therein.

Here, the warrants specified distinct stalking behavior on distinct dates. Logically, defendant's repeated calls and threats made on June 9 were sufficient to establish the requisite course of conduct to support the felony stalking charge, i.e., a pattern of conduct composed of a series of two or more separate noncontinuous acts evidencing a continuity of purpose. See MCL 750.411i(1)(a); MSA 28.643(9)(1)(a). Likewise, the ten calls and the threats that the victim received at work on July 17 may also constitute a course of conduct. Even if the continuous stalking from September 1992 through August 1993 formed the basis of both the June 1993 and the July 1993 offenses, defendant pleaded guilty of two separate episodes of stalking. Defendant's double jeopardy argument is, therefore, untenable. Accordingly, neither the Michigan nor the United States Constitution prohibits defendant's felony stalking conviction as a violation of double jeopardy principles.

This conclusion is further supported by reference to the felony stalking statute, MCL 750.411i; MSA 28.643(9). Under § 411i(2), an individual who engages in stalking is guilty of aggravated stalking if *any* of the following events occurs:

> (a) The actions constituting the offense are in violation of a restraining order[5] and the individual has received actual notice of that restraining

[5] Defendant acknowledges that a restraining order was issued against him but he asserts, without attaching the order, that it only restrained him from assaulting, beating, molesting, or wounding the victim. Presumably, defendant makes this point in order to show that he did not act in violation of a restraining order when he made repeated telephone calls to the victim and threatened her, her children, and her father. At the plea hearing, however, defendant admitted that he violated the restraining order. Because defendant could be

order, or the actions are in violation of an injunction or preliminary injunction.

* * *

(c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the victim's household.

(d) *The defendant has been previously convicted of a violation of this section or section 411h* [i.e., the misdemeanor stalking statute, MCL 750.411h; MSA 28.643(8)]. [Emphasis added.]

Here, defendant first pleaded guilty of misdemeanor stalking under a township ordinance paralleling § 411h. As evidenced by § 411i(2)(d), the Legislature apparently intended that prosecutors may use such a misdemeanor conviction as one of several vehicles for establishing aggravated stalking where threats to kill or injure another have been made. We therefore conclude that defendant's convictions of violating a township antistalking ordinance and attempted aggravated stalking did not violate double jeopardy principles because the incidents underlying the convictions did not arise out of a single criminal act, occurrence, episode, or transaction. *White, supra.*

II

With respect to defendant's challenge to the constitutionality of §§ 411h and 411i, defendant asserts that the statutes are void because of vagueness and they abridge defendant's First Amendment right to free speech by permitting a complainant to determine subjectively which tele-

charged with aggravated stalking under §§ 411i(2)(c) and (d) without regard to the restraining order, and because we do not have a copy of the order, we will not speculate about the effect of the restraining order.

phone calls are acceptable and which are criminal. We disagree.

We begin this analysis with the proposition that a statute is accorded a strong presumption of validity, and we have a duty to construe it as such absent a clear showing of unconstitutionality. *People v Lardie,* 207 Mich App 615, 617; 525 NW2d 504 (1994). It is a basic tenet of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Michigan State AFL-CIO v Civil Service Comm (After Remand),* 208 Mich App 479, 492; 528 NW2d 811 (1995), citing *Grayned v Rockford,* 408 US 104, 108; 92 S Ct 2294; 33 L Ed 2d 222 (1972). Our Supreme Court has adopted the following standards for evaluating vagueness challenges:

> A statute may be challenged for vagueness on the grounds that it
> —is overbroad, impinging on First Amendment freedoms, or
> —does not provide fair notice of the conduct proscribed, or
> —is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. [*AFL-CIO, supra* at 492, citing *Grayned, supra* at 108-109.]

On the basis of these standards, we find that the stalking statutes are not unconstitutionally vague.

First, neither § 411h nor § 411i is overbroad or impinges on defendant's right of free speech under the United States and the Michigan Constitutions. See, e.g., *Kotmar, Ltd v Liquor Control Comm,* 207 Mich App 687, 696; 525 NW2d 921 (1994). In *Broadrick v Oklahoma,* 413 US 601, 613-615; 93 S Ct 2908; 37 L Ed 2d 830 (1973), the United States Supreme Court recognized that, with respect to

overbreadth challenges, a person to whom a statute may be applied constitutionally may not challenge that statute on the ground that it conceivably may be unconstitutional when applied to others in situations not presented to the court:

> [T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. [*Id.* at 615.]

In the case at bar, the stalking statutes address a wilful pattern of conduct, including, but not limited to, following or confronting the victim or calling the victim (i.e., conduct combined with speech), that would cause a reasonable person to feel terrorized, threatened, or harassed, and would cause a reasonable person in the victim's position to suffer emotional distress. Sections 411h(1)(a)-(d) and 411i(1)(a), (c)-(d). The contact must be initiated or continued without the victim's consent or in disregard of the victim's desire to discontinue the contact. Sections 411h(1)(e) and 411i(1)(f). Both § 411h(1)(c) and § 411i(1)(d) state that "[h]arassment does not include constitutionally protected activity or conduct that serves a legitimate purpose," and such protected activity or conduct has been defined as labor picketing or other organized protests. See *Pallas v Florida,* 636 So 2d 1358, 1360 (Fla App, 1994) (upholding a similar stalking statute against vagueness challenges). Finally, for ag-

gravated stalking under § 411i(2), there must also be a credible threat to kill another or inflict physical injury against the victim, a family member, or household member, a prior stalking conviction, or actions constituting the offense that are in violation of a restraining order, injunction, or probation order. Indeed, the statute could not be applied to entirely innocent conduct, as defendant suggests. See *Pallas, supra* at 1363.

Defendant's repeated telephone calls to the victim, sometimes fifty to sixty times a day whether the victim was at home or at work, and his verbal threats to kill her and her family do not constitute protected speech or conduct serving a legitimate purpose, even if that purpose is "to attempt to reconcile," as defendant asserts. See *id.* The stalking law is aimed at preventing such activity because "[t]he threat of violence, real or perceived, is almost always present in such cases; tragically, it is far from unheard of for a pattern of stalking to end in the stalker killing the stalked."[6]

Second, we believe that the stalking law does provide fair notice of the proscribed conduct. *Id.* Defendant asserts that his conduct was a result of the parties' relationship, not the result of any criminal intent. This argument begs the question because the stalking statutes specifically prohibit defendant's unconsented contact with his victim that was aimed at threatening, intimidating, harassing, and frightening her regardless of his alleged romantic inclinations.[7] The United States

---

[6] House Legislative Analysis, HB 5472 and SB 719, January 4, 1993; the bills became 1992 PA 260 and 261, now § 411h and § 411i, respectively.

[7] The House Legislative Analysis of §§ 411h and 411i also reveals that "[s]talking often involves a former spouse, boyfriend or girlfriend who harasses and intimidates the ex-partner, and sometimes even members of the victim's family," and that "[a]ccording to one report, one in 20 adults will be stalked in his or her lifetime." See n 6, *supra.*

Supreme Court has stated that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v Lawson,* 461 US 352, 357; 103 S Ct 1855; 75 L Ed 2d 903 (1983). "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *United States v Nat'l Dairy Products Corp,* 372 US 29, 33; 83 S Ct 594; 9 L Ed 2d 561 (1963); see also *West Bloomfield Charter Twp v Karchon,* 209 Mich App 43, 48-49; 530 NW2d 99 (1995). Further, a statute does not provide fair notice of proscribed conduct if it " 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Id.* at 49, quoting *Allison v Southfield,* 172 Mich App 592, 596; 432 NW2d 369 (1988).

Applying the law to the facts of this case, we believe that the stalking statutes provide fair notice of the prohibited conduct. A person of reasonable intelligence would not need to guess at the meaning of the stalking statutes, nor would his interpretation of the statutory language differ with regard to the statutes' application, in part because the definitions of crucial words and phrases that are provided in the statutes are clear and would be understandable to a reasonable person reading the statute. *Id.* Also, the meaning of the words used to describe the conduct can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning. *Kotmar, supra.* We therefore conclude that

the statutes are not void for vagueness on the basis of inadequate notice.

Third, defendant asserts that "the trier of fact has unstructured and unlimited discretion to determine whether the complainant was receiving a series of contacts in a positive or in a negative fashion," which renders the statutes vague. This argument also must fail. Vagueness cannot be established under this prong unless the wording of the statute itself is vague, which defendant does not allege and which we do not find. *Id.* at 697. Accordingly, we conclude that the stalking statutes are not void for vagueness under these standards. *Id.*

Although defendant in this case has not made the additional argument that the stalking statutes are unconstitutional because they shift the burden of proof of an element of the offense to the defendant, this Court is aware that the statutes have been attacked on this ground in other cases. Judicial economy requires that, because the statutes are already before us on various constitutional challenges, we address this issue as well.

Specifically, §§ 411i(5) and 411h(4) both provide:

> In a prosecution for a violation of this section, evidence that the defendant continued to engage in a course of conduct involving repeated unconsented contact with the victim after having been requested by the victim to discontinue the same or a different form of unconsented contact, and to refrain from any further unconsented contact with the victim, *shall give rise to a rebuttable presumption that the continuation of the course of conduct caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.* [Emphasis added.]

This is not the only criminal statute that in-

cludes a rebuttable presumption. See, for example, MCL 330.2020; MSA 14.800(1020), which presumes a defendant to be competent to stand trial absent evidence to the contrary. The constitution requires that there be some rational connection between the fact proved and the ultimate fact presumed. The presumption of one fact from evidence of another does not constitute a denial of due process of law or of the equal protection of the law. *People v Jackson,* 280 Mich 6, 11-12; 273 NW 327 (1937).

Given this Court's belief that the egregious nature of the conduct that must be proved to find a violation of the stalking law is substantial, there certainly exists a rational connection between such conduct and the presumption that the victim would feel harassed or frightened by its continuation. This type of unlawful conduct is clearly present in the instant case. Thus, considering the nature of the required conduct necessary to prove the stalking, the presumption regarding the victim's state of mind is not so unreasonable as to be purely arbitrary. Consequently, this Court does not find that §§ 411i(5) or 411h(4) violates due process or equal protection guarantees.

Additionally, in support of this conclusion, we note that §§ 411i(5) and 411h(4) must be read in connection with MRE 302(b), which provides:

> Whenever the existence of a presumed fact against an accused is submitted to the jury, the court shall instruct the jury that it may, but need not, infer the existence of the presumed fact from the basic facts and that the prosecution still bears the burden of proof beyond a reasonable doubt of all the elements of the offense.

Hence, it is clear that the burden of proof on each and every element of the offense of stalking re-

mains with the prosecution, and it is mandated that the jury be so instructed.

## III

Finally, we address defendant's challenge to the trial court's award of $3,000 restitution to the victim of defendant's stalking. Defendant alleges that the restitution award was unsupported by documentary evidence and that the trial court gave an insufficient explanation of the basis for the award. We agree.

Sections 16 and 17 of the Crime Victim's Rights Act, MCL 780.766; MSA 28.1287(766) and MCL 780.767; MSA 28.1287(767), respectively, not only authorize a court to order restitution for the crime victim but also specify the appropriate considerations for establishing the amount of restitution. Section 16(5) specifically permits a victim of physical or psychological injury to recover the cost of actual professional services relating to both care and rehabilitation for the victim and members of the victim's family. Section 16(13) instructs the court that "[i]n determining the amount of restitution, the court shall consider the defendant's earning ability, financial resources, and any other special circumstances that may have a bearing on the defendant's ability to pay."[8] Section 17 sets forth the specific standards that the trial court should consider when ordering restitution.

In the case at bar, the trial court failed to follow the statutory procedure for determining the amount of restitution to which the victim was entitled. The transcript of the sentencing hearing is devoid of any reference to the mandatory guide-

---

[8] We note that § 16(13) was added to the restitution statute effective May 1, 1994, which was after defendant was sentenced for attempted aggravated stalking. Nevertheless, § 17, which has been in effect since 1985, reiterates and expands upon the language of § 16(13).

lines set forth in § 17. Instead, at the hearing, the victim merely stated that her losses equaled hundreds or thousands of dollars. The trial court and the victim settled on $3,000 as an appropriate, but unsubstantiated, figure. Also, the presentence report was not included in the lower court record or referred to during the hearing; thus, we have no way to determine whether any other information concerning restitution was available to the court. *People v Tyler,* 188 Mich App 83, 89; 468 NW2d 537 (1991). We recognize that restitution is not a substitute for civil damages but only encompasses those losses that are (1) easily ascertained and measured and (2) a direct result of the defendant's criminal acts. *Id.*

Here, "defendant is correct in asserting that the trial court's determination of restitution fell short of the statutory requirements." *People v Grant,* 210 Mich App 467, 471; 534 NW2d 149 (1995). We believe that the trial court erred in failing to consider or request evidence relevant to the financial resources and earning ability of defendant and the financial needs of defendant and defendant's dependents, if any, in addition to the amount of the victim's losses in accordance with § 17(1). See also *People v Avignone,* 198 Mich App 419, 424; 499 NW2d 376 (1993). Further, when defendant filed his postsentence motion challenging the restitution award as being arbitrary and unsupported by the evidence, the court became obligated under § 17(4) to conduct a hearing to determine the earning ability of defendant and the amount of loss sustained by the victim, among other statutory considerations. *Avignone, supra;* cf. *Grant, supra.* The trial court held no such hearing.

While we have no doubt that the victim is entitled to some amount of restitution, it is impos-

sible in the case at bar to ascertain whether the restitution was ordered for allowable damages and in an amount permitted by §§ 16 and 17 of the Crime Victim's Rights Act. Therefore, the amount defendant was ordered to pay is essentially arbitrary and constitutes an abuse of the trial court's discretion. We therefore vacate the restitution award and remand for resentencing with regard to that issue. *Grant, supra* at 471-473; *Tyler, supra.* At resentencing, we order the trial court to comply with the statutory procedure when determining the amount of restitution to which the victim is entitled.

Convictions and sentence affirmed; the order of restitution is vacated and the matter is remanded for a resentencing hearing to determine the appropriate amount of restitution. We retain no further jurisdiction.