*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRUCE LEONARD VANDERMEULEN,

Defendant-Appellant.

UNPUBLISHED
July 25, 2019

No. 342960
Newaygo Circuit Court
LC No. 17-011626-FH

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of aggravated stalking in violation of MCL 750.411i(2)(a). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 48 months to 15 years' incarceration. We affirm both defendant's conviction and sentence.

Defendant and the victim were married with six children before the victim divorced defendant in 2015. Toward the end of their marriage, defendant began to drink and was jailed for drunk driving. After the divorce and while defendant was in jail, the victim sought and received an ex parte personal protection order (PPO) against defendant, which prohibited contact with the victim.

After having received actual notice of the PPO, defendant continued to contact the victim through a variety of means. This contact ranged from text messages, voice mails, and letters. At about this time, defendant was incarcerated on an unrelated charge of operating a vehicle while intoxicated. While incarcerated, defendant called and left voice mails for the victim approximately 79 times. When restrictions were put on defendant's ability to call the victim, defendant circumnavigated those restrictions with the aid of a third party.

After defendant was charged with aggravated stalking on the basis of his PPO violation, the trial court entered a bond condition prohibiting defendant's contact "with victim or residence." However, defendant continued to send letters to the victim's residence, albeit addressed to the couple's children. The prosecution then charged defendant with a second charge of aggravated stalking on the basis of this contact.

-1-

A jury convicted defendant on both counts.[1]  Both defense counsel and the prosecution agreed that the trial court correctly assessed defendant's sentencing guidelines at 12 to 48 months.  The trial court sentenced defendant to 4 to 15 years on both counts, with credit for 407 days.

Defendant argues that there is insufficient evidence to convict him of aggravated stalking because the evidence did not show that defendant willfully harassed the victim; defendant did not intend to violate the bond conditions when he sent letters to the victim's residence, as those letters were addressed to his children, rather than the victim; and the victim did not actually or reasonably feel emotionally disturbed by these contacts because she was aware of the good natured and religious beliefs that defendant espoused.  Defendant also challenges the reasonableness of his sentence.

"Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt."  *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010).  A defendant's challenge to sufficiency of the evidence is reviewed de novo.  *Id*. at 177.  "In determining sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prosecution."  *Id*. at 175.  "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict."  *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000).  "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime."  *Id*. (quotation marks and citation omitted).

"Aggravated stalking consists of the crime of 'stalking,' MCL 750.411h(1)(d), and the presence of an aggravating circumstance specified in MCL 750.411i(2)."  *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2003) (quotation marks and citation omitted).

> Stalking means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.  [MCL 750.411h(1)(d) (quotation marks omitted).]

MCL 750.411i(2) elevates stalking to aggravated stalking when a defendant stalks while violating a restraining order of which a defendant has received actual notice and stalks in violation of a condition of pretrial release.  MCL 750.411i(2)(a) and (b).

Defendant argues that willfulness requires intent to actually harass in the form of a "knowledge and a purpose to do wrong."  *People v Lerma*, 66 Mich App 566, 570-571; 239

---

[1] This appeal relates only to defendant's second conviction related to violation of the bond conditions as charged in Lower Court Case No. 17-011626-FH.  To the extent that defendant challenges his conviction related to violation of the PPO as charged in Lower Court Case No. 16-011483-FH, that claim is not properly before this Court.

NW2d 424 (1976). Defendant asserts that because his contacts were in good faith, those contacts cannot meet this definition of willful. This argument lacks merit.

This Court has recognized that the language defendant relies on in *Lerma* is dicta insofar as it defines the "knowingly" element for specific intent crimes. *People v Watts*, 133 Mich App 80, 82; 348 NW2d 39 (1984). In *Watts*, we agreed with other decisions that "examined the intent behind the legislative or judicial inclusion of an element of knowledge in order to determine whether the crime is a specific intent crime." *Id*. at 82-83. Therefore, the language defendant relies on is not binding on this Court. See *People v Higuera*, 244 Mich App 429, 437; 625 NW2d 444 (2001) (recognizing that dicta is merely persuasive).

Further, the Legislature specifically intended the aggravated stalking law to encompass attempts at reconciliation. See *People v White*, 212 Mich App 298, 311; 536 NW2d 876 (1995). The legislative intent in the criminalization of aggravated stalking does not include providing a "romantic inclinations" defense. *Id*. at 311-312. For these reasons, defendant's good-faith defense is ineffective, and the prosecution presented sufficient evidence to find defendant met the intent requirement for aggravated stalking.

Defendant also argues that his conviction was not supported by sufficient evidence because the letters he sent to the victim's residence were not intended for the victim, but rather for his children who resided there. This argument fails because the prosecution presented sufficient evidence for the jury to find that defendant intended the letters to reach the victim.

Assuming arguendo that defendant's defense of having misunderstood his no contact bond condition would diminish his culpability, there was sufficient evidence presented for the jury to conclude that defendant's claim of confusion was unbelievable and that defendant's letters to his children were intended to contact the victim.

Although it was established that defendant addressed these letters to his children, the prosecution presented evidence that defendant knew some of his children could not read. A natural inference for the rational trier of fact is that the victim, as the children's caretaker, would be required to read these letters for the children. This is bolstered by the decision of defendant to use a nickname that he only used with the victim in one of the letters. Although defendant asserted that the victim was lying when she claimed that he only used this nickname with her, this is the type of credibility determination that we must leave to a jury to decide. See *People v Wolfe*, 440 Mich 508, 517-518; 489 NW2d 748 (1992), amended 441 Mich 1201.

Context beyond the letters themselves also undermines defendant's argument. The prosecution presented evidence of defendant's successful attempts to circumnavigate the security measures that the jail imposed on his phone contact with the victim. Defendant's subterfuge in his phone contacts with the victim could allow a rational trier of fact to infer subterfuge through his letter writing to the victim. "A jury may infer consciousness of guilt from evidence of lying or deception." *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008). Defendant's deception in circumnavigating his phone restrictions to contact the victim increased the likelihood that the jury disbelieved defendant's claims of misunderstanding the meaning of his bond conditions and accusations that the victim lied about their relationship and her emotional state.

Viewed "in a light most favorable to the prosecution," the jury could have believed that defendant's claims of mistake were a facade. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001) (quotation marks and citation omitted). Although defendant presented mistake as an alternative explanation for his letter sending, "it is simply not the task of an appellate court to adopt inferences that the jury has spurned." *People v Hardiman*, 466 Mich 417, 431; 646 NW2d 158 (2002). Because the jury has already spurned the defendant's explanation, we affirm defendant's conviction on this count.

Finally, defendant argues that the victim did not experience actual distress from his actions, and that if she did experience actual distress, the distress was unreasonable. Defendant argues that a reasonable person would not have suffered emotional distress under the circumstances. This argument fails because the jury, as a rational trier of fact, was presented with sufficient evidence to find that the victim felt emotional distress.

Defendant points to a single exchange in the two-day trial to support his point. On cross-examination, the victim explained that she was upset by defendant's mention of thinking about her every day in one of his letters. On the basis of this exchange, defendant alleges that the victim's claim of emotional distress was an overreaction to defendant's continuing feelings of love. This single exchange does not mitigate the significant evidence presented to the jury, nor does it require this Court to nullify the jury's verdict. The victim repeatedly testified to her feelings about defendant's contact. She interpreted his repeated contacts as an intent that defendant would continue pursuing her. Defendant's letters support this interpretation, claiming that he would continue pursuing her regardless of legal action she may take. The jury likely agreed with her interpretation, given the context and verdict. In addition, on at least one occasion, defendant told the victim that unless she wrote him, their children "will be dead twice." Regardless of the alleged biblical background, the victim was upset by this claim. The victim elaborated that the prospect of this repeated contact over her objections made her feel controlled, frustrated, and intimidated by defendant. The victim further explained that defendant's persistence and claims of having nothing to lose scared her.

The jury was best suited to review the credibility of the victim's claims, and all conflicts in the evidence must be resolved in favor of the prosecution. See *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). Because all conflicts in the evidence must be resolved in favor of the prosecution, we defer to the jury's determination of the victim's description of her emotional state. It was not unreasonable for a jury to find beyond a reasonable doubt that these repeated contacts by defendant over the victim's objections would cause emotional distress.

Defendant next argues that his sentence violates the principle of proportionality because his sentencing guidelines barely met the applicable levels and his actions were motivated by his desire to have contact with his children and reunite with his wife. We disagree.

Under MCL 769.34(10), we are required to affirm a defendant's sentence when a minimum sentence is within the appropriate guideline sentence range. *People v Jackson (On Remand)*, 320 Mich App 514, 527; 907 NW2d 865 (2017). See *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016). Defendant's minimum sentence is within the appropriate sentencing guidelines range. And so we must affirm defendant's sentence "unless

there was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196.

Here, defendant does not present or allege that the trial court relied on inaccurate information. At sentencing and on appeal, there has been no dispute that defendant's guidelines were correctly assessed on both counts at between 12 to 48 months. Defendant's argument on the basis of the unreasonableness of his sentence is, therefore, precluded by MCL 769.34(10).

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro