*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 22, 2024

Plaintiff-Appellee,

v

No. 364909
Benzie Circuit Court
LC No. 2022-002834-FH

JOSHUA JAMES HUMPHREY,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Defendant, Joshua Humphrey, was convicted after a jury trial of aggravated stalking, MCL 750.411i(2). He was sentenced to four days' imprisonment in jail and 60 months' probation. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Humphrey and the complainant divorced in 2017. Humphrey would not leave her alone. Rather, he would show up at her workplace and refuse to leave, and he would yell and swear at her in front of their child. As a result, in November 2020, the complainant obtained an ex parte personal protection order (PPO) against Humphrey. Relevant to this appeal, the PPO prohibited Humphrey from stalking the complainant, and it specifically stated that stalking included "following [the complainant] or appearing within [her] sight," "appearing at [the complainant's] workplace or residence," or "approaching or confronting [the complainant] in a public place or on private property." After the PPO was issued, Humphrey went online and posted "absolutely outrageous statements" about the complainant and her co-workers. Consequently, in May 2021, the PPO was amended to prohibit Humphrey from (1) "posting messages through the use of any medium of communications including the internet, or a computer, or any electronic medium," (2) contacting her using third parties, and (3) from interfering with her at "her place of employment or education" or from engaging in conduct that impaired her employment or education. Humphrey was notified about the amended PPO, which included all the prohibitions stated in the original PPO.

Despite the amended PPO, Humphrey repeatedly appeared outside the complainant's workplace in July 2021. First, on July 12, 2021, while the complainant was near the employee parking lot behind her workplace, Humphrey drove by very slowly while staring at her. He repeated the same behavior—driving by slowly while staring at the complainant—on July 13, 2021. On July 14, 2021, he again drove slowly past the complainant's workplace. This time she was not present, but she was informed about Humphrey's actions by a concerned co-worker. A police officer who responded to the July 12 and July 13 incidents testified that the complainant was "shaking physically, her voice was quieter, kind of broken, [and she was] emotional, very emotional."

On July 16, 2021, the complainant was driving to a secondary worksite when Humphrey appeared behind her. She pulled over so that he would pass. She then continued to her worksite and was able to complete her job. Yet, when she left the property, she saw in her rear-view mirror that Humphrey was a block away from her. Humphrey accelerated and followed her "exceptionally close" down Main Street before turning. The complainant recorded Humphrey because she wanted to "show what [he] had been doing all week." The same police officer that had responded to the earlier incidents responded to the July 16 incident. The officer testified that the complainant looked "distressed in her body, she was uncomfortable and scared regarding the situation."

At trial, Humphrey elicited testimony that he had a post office box in town, that the address on the amended PPO showed that he lived in town, and that, because of road construction, he would have to drive by the complainant's workplace to pick up his mail at the post office. However, the complainant testified that, although Humphrey's address was listed as being in town, he actually lived in a different town. Moreover, the police office who responded to the incidents testified that Humphrey could have driven to the post office via a different (longer) route that would not have taken him past the complainant's workplace.

## II. DIRECTED VERDICT

## A. STANDARD OF REVIEW

Humphrey first argues that the trial court erred by denying his motion for a directed verdict. He contends that the language in the aggravated stalking statute that prohibits an individual from appearing within the sight of the victim is unconstitutionally vague and overbroad. Issues of constitutional law are reviewed de novo. *People v Johnson*, 340 Mich App 531, 542; 986 NW2d 672 (2022).

## B. ANALYSIS

The aggravated stalking statute provides that the trial court "may restrain or enjoin an individual against whom a protection order is sought from . . . [f]ollowing or appearing within the sight of that individual." MCL 750.411i(1)(f). Relying on *In re JCB*, 336 Mich App 736; 971 NW2d 705 (2021), Humphrey argues that the language in the PPO and aggravated stalking statute that prohibited him from appearing in the complainant's sight is unconstitutionally vague and overbroad. We disagree.

-2-

In *JCB*, the petitioner obtained an ex parte PPO against a neighbor on the basis of the neighbor's repeated verbal harassment. *Id*. at 739. On appeal, the neighbor argued that there was insufficient evidence to support his criminal contempt conviction because the evidence did not show that he violated the PPO. *Id*. at 747. Although not relevant to the issues raised on appeal, in a footnote, the *JCB* Court noted that the PPO prohibited the neighbor from following or appearing within sight of the petitioner. *Id*. at 752 n 3. The Court stated:

> We question the validity of the breadth and scope of this prohibition, particularly in light of the facts of this case. Petitioner and respondent are neighbors, and under these terms, respondent could be deemed in violation by merely exiting his home and being viewed by petitioner. However, petitioner did not raise this ground as a basis for the violation of the PPO and criminal contempt. Moreover, petitioner did not assert that respondent's sole appearance was problematic, but rather, it was respondent's presence, yelling, verbal abuse, and threats of violence. We cannot address the constitutional breadth of the "appearing within sight" of the petitioner provision because our resolution would be premised on a hypothetical when our focus must be on the specifics of the case at hand. *People v Lockett*, 295 Mich App 165, 176; 814 NW2d 295 (2012). Nonetheless, we caution against a literal application of the "appearing within sight" provision. [*Id*.]

The facts of *JCB* are distinguishable from the facts of this case. Humphrey was not the complainant's neighbor, and the record does not establish that he lived near the complainant or her workplace. Rather, the testimony at trial indicated that he lived in a different town during July 2021. Humphrey maintained a post office box down the street from the complainant's workplace, and he argues that it would have been impossible for him to travel to the post office without passing her workplace because of road construction. However, the responding police officer testified that there was a longer route to the post office that would bypass the complainant's workplace. We conclude, as a result, that Humphrey's reliance on the dicta in *JCB* is not persuasive. Humphrey could exit his house and go to the post office without following or appearing within the complainant's sight. Further, although it may have been inconvenient, it was possible for Humphrey to get to the post office without passing the complainant's place of employment or appearing within her sight.

Humphrey argues, generally, that a person of ordinary intelligence would not understand the meaning of the statutory language permitting a PPO from prohibiting a person from following or appearing within the sight of another person. We disagree. "Statutes and ordinances are presumed to be constitutional and are so construed unless their unconstitutionality is clearly apparent." *People v Gratsch*, 299 Mich App 604, 609; 831 NW2d 462 (2013) (quotation marks and citation omitted), vacated in part on other grounds 495 Mich 876 (2013). "The party challenging the statute has the burden of proving its unconstitutionality." *Id*. "A statute may be challenged as unconstitutionally vague when (1) it is overbroad and impinges on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether the law has been violated." *Id*. at 610. "A statute provides fair notice when it gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id*. "To determine whether a statute is unconstitutionally vague, this Court examines the entire text of the statute and gives the words of the statute their ordinary meanings." *Lockett*, 295 Mich App at 174. "[A] statute is

sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *People v Mesik (On Recon)*, 285 Mich App 535, 545; 775 NW2d 857 (2009) (quotation marks and citation omitted). "A statute is overbroad when it precludes or prohibits constitutionally protected conduct in addition to conduct or behavior that it may legitimately regulate." *People v Gaines*, 306 Mich App 289, 320; 856 NW2d 222 (2014).

In *People v White*, 212 Mich App 298, 311-312; 536 NW2d 876 (1995), this Court determined that the stalking and aggravated stalking statutes do not prohibit constitutionally protected activity or conduct that serves a legitimate purpose and that they cannot be applied to entirely innocent conduct. Moreover, "[a] person of reasonable intelligence would not need to guess at the meaning of the stalking statutes, nor would his interpretation of the statutory language differ with regard to the statutes' application, in part because the definitions of crucial words and phrases that are provided in the statutes are clear and would be understandable to a reasonable person reading the statute." *Id*. at 312. Thus, the *White* Court concluded that "the statutes are not void for vagueness on the basis of inadequate notice." *Id*. at 312-313. Consequently, it has already been determined that the aggravated stalking statute is not void for vagueness either because it is overbroad or because it does not provide fair notice of the conduct proscribed. Humphrey, therefore, cannot overcome the presumption that the aggravated stalking statute is constitutional.

## III. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Humphrey argues that the prosecution presented insufficient evidence to sustain his aggravated-stalking conviction because his conduct of driving past the complainant's workplace was insufficient to demonstrate that he "appeared at" her workplace. We review de novo a challenge to the sufficiency of the evidence to support a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence . . . in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Johnson*, 340 Mich App 531, 548; 986 NW2d 672 (2022) (quotation marks and citation omitted).

### B. ANALYSIS

"Aggravated stalking consists of the crime of stalking . . . and the presence of an aggravating circumstance . . . . " *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002) (quotation marks and citations omitted). MCL 750.411i(2) governs aggravated stalking and provides, in relevant part:

(2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:

(a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining

order or at least 1 of the actions is in violation of an injunction or preliminary injunction. [MCL 750.411i(2)(a).]

" 'Stalking' " is "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). " 'Harassment' means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." MCL 750.411i(1)(d). And " '[u]nconsented contact' means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411i(1)(f). Unconsented contact includes, but is not limited to, "[f]ollowing or appearing within the sight of that individual," MCL 750.411i(1)(f)(*i*), and "[a]ppearing at that individual's workplace or residence," MCL 750.411i(1)(f)(*iii*).

The amended PPO prohibited Humphrey, in relevant part, from "[i]nterfering with [the complainant at her] place of employment or education, or engaging in conduct that impairs his or her employment or educational relationship or environment." The record shows that on July 12 and 13, 2021, Humphrey drove very slowly past the complainant's workplace while staring at her. Viewed in the light most favorable to the prosecution, the combined effect of his acts of driving by her workplace, driving slowly, and staring at her was sufficient to establish that Humphrey violated the PPO.

There was also sufficient evidence to support a finding that Humphrey engaged in stalking as it is defined in MCL 750.411i(1)(e). Humphrey harassed the complainant by repeatedly appearing within her sight by driving slowly past her workplace on multiple days while staring at her, by following behind her vehicle while she was leaving work on one occasion, and by speeding up and following her "exceptionally close" as she left a secondary worksite. Based upon his actions and his history with the complainant, a reasonable juror could conclude that the repeated, unconsented conduct would cause a reasonable individual to suffer emotional distress. Moreover, the complainant did, in fact, suffer emotional distress. She testified that she was scared and frustrated by the contact because despite how many times she had contacted the police or asked the court for help to make him stop, his actions in July 2021 showed that he was "not going to stop." Moreover, the responding officer testified that the complainant appeared to be visibly distressed by Humphrey's conduct. Thus, there is sufficient evidence to sustain Humphrey's aggravated-stalking conviction.

## IV. SENTENCE

### A. STANDARD OF REVIEW

Humphrey argues that the trial court erred by assessing 10 points for offense variable (OV) 19. "This Court reviews for clear error a trial court's findings in support of particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and

applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Clear error exists when this Court is "left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019).

## B.  ANALYSIS

OV 19 applies if there was a "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. A court must score 10 points if the offender "directly or indirectly violated a personal protection order." MCL 777.49(c). Here, the PPO prohibited Humphrey from engaging in stalking. The jury convicted him of aggravating stalking. Consequently, Humphrey has directly violated a PPO. The trial court did not err by scoring OV 19 at 10 points.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett