IN THE MATTER OF GENTRY

Docket No. 74602. Submitted June 12, 1984, at Detroit.—Decided
April 4, 1985.

Everette E. Gentry was born on December 23, 1982. Shortly
thereafter a Department of Social Services caseworker filed a
petition in the Wayne Probate Court for the temporary re-
moval of Everette from her mother. In accordance with the
petition, Everette was placed in the temporary custody of the
probate court. On February 2, 1983, a supplemental petition for
the termination of parental rights was filed against Nordiya
Gentry and Solomon D. Bryson, Everette's parents, on grounds
of neglect. Following a hearing, the court, Thomas A. Maher,
J., terminated the parental rights of Nordiya Gentry and
Solomon Bryson and placed Everette in the permanent custody
of the court. The parents appealed, contending that the sections
of the juvenile chapter of the probate code relied upon by the
court in terminating their parental rights are unconstitution-
ally vague and overbroad. *Held:*

1. Because manifest injustice could occur if the parents'
parental rights were terminated under an unconstitutional
statute, the Court of Appeals reviewed the constitutional argu-
ment despite the fact that the argument was not raised in the
probate court.

2. Respondents' conduct clearly fits within the statutes, there-
fore they have no standing to argue that the statutes are
overbroad and do not provide fair notice of the conduct pro-
scribed.

3. The sections of the juvenile chapter of the probate code

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[2] 59 Am Jur 2d, Parent and Child § 10.
[3-7] 73 Am Jur 2d, Statutes § 346.
Supreme Court's views as to overbreadth of legislation in connec-
tion with First Amendment rights. 45 L Ed 2d 725.
Supreme Court's application of vagueness doctrine to noncriminal
statutes or ordinances. 40 L Ed 2d 823.
[7] 59 Am Jur 2d, Parent and Child §§ 39, 40.
Validity of state statute providing for termination of parental
rights. 22 ALR4th 774.

relied upon by the probate court sufficiently delineate standards for the assertion of probate court jurisdiction and the termination of parental rights so as to withstand a constitutional challenge on the ground of vagueness.

Affirmed.

1. APPEAL — STATUTES — CONSTITUTIONAL LAW — PRESERVING QUESTION.

A challenge to the constitutionality of a statute not raised at trial is not preserved for appellate review in the absence of manifest injustice.

2. INFANTS — CUSTODY — DUE PROCESS.

A parent's right to the custody of his children is an element of "liberty" guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States (US Const, Ams V, XIV).

3. CONSTITUTIONAL LAW — DUE PROCESS — STATUTES — VAGUENESS.

A statute may be challenged for vagueness on three grounds: (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; (3) its coverage is overbroad and impinges on First Amendment freedoms.

4. CONSTITUTIONAL LAW — DUE PROCESS — STATUTES — VAGUENESS.

Challenges on the ground of vagueness to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.

5. CONSTITUTIONAL LAW — STATUTES — OVERBREADTH.

A statute which clearly applies to a given situation may not be challenged on grounds of overbreadth.

6. CONSTITUTIONAL LAW — STATUTES — VAGUENESS — APPEAL.

Reversal of a court's decision because the statute upon which the court relied in making its decision is unconstitutionally vague is not required, even though the statute may be susceptible to impermissible interpretations, where the statute can be narrowly construed so as to render it sufficiently definite to avoid vagueness.

7. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — CONSTITUTIONAL LAW — VAGUENESS.

The terms "proper", "unfit", "mental deficiency or mental illness", and "reasonable expectation" as used in sections of the juvenile chapter of the probate code which deal with the

probate court's jurisdiction over children and its power to terminate parental rights sufficiently delineate standards for the assertion of probate court jurisdiction and the termination of parental rights so as to withstand constitutional challenge on the basis of vagueness (MCL 712A.2[b], 712A.19a; MSA 27.3178[598.2(b)], 27.3178[598.19a]).

*John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Ilene Weiss Fruitman, P.C.* (by *Ilene Weiss Fruitman),* for Everette E. Gentry.

*Michael A. Courtney,* for Nordiya Gentry and Solomon Bryson.

Before: DANHOF, C.J., and T. M. BURNS and T. C. MEGARGLE,[*] JJ.

PER CURIAM. Respondents are the natural parents of Everette Gentry, born out of wedlock on December 23, 1982. On September 13, 1983, the probate court terminated respondents' parental rights. This Court granted respondents' application for delayed appeal.

Four days after Everette's premature birth, Dr. Kunhutselo, one of the examining physicians, concluded that Everette was suffering symptoms consistent with neonatal addiction to drugs. Dr. Kunhutselo filed a report of actual or suspected child abuse or neglect with the Michigan Department of Social Services. On the basis of Dr. Kunhutselo's report and the DSS's prior contact with respondent mother, DSS caseworker Julie Farina filed a petition for the temporary removal of Everette from respondent mother's custody. In accordance

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

with the petition, Everette was placed in the temporary custody of the probate court on December 28, 1982.

On February 2, 1983, a supplemental petition for the termination of parental rights was filed against respondents. The petition alleged that the parents had neglected to provide Everette with proper and necessary care. On September 13, 1983, the probate court held a hearing on the petition to terminate parental rights. Both respondents were represented by counsel.

DSS caseworker Julie Farina testified that respondent mother was the mother of five other children, all of whom had been made permanent wards of the court. Testimony also revealed that respondent mother had been committed at various times to Ionia State Hospital for the Criminally Insane, Ypsilanti State Mental Hospital and Detroit Psychiatric Institute. The testimony at the hearing strongly indicated that respondent mother's mental problems had continued into the present. Ruth Adsit, a DSS foster care worker, testified that she had tried on three occasions to outline a plan for the return of Everette to her mother's custody, but respondent mother was not able to understand what was being discussed. Ms. Adsit also stated that respondent mother was unable to comprehend that a two-month-old baby was unable to talk, eat table food, and walk and the home was uninhabitable. Ms. Farina's testimony regarding the home was similar.

Both the DSS case worker and the foster care worker testified that respondent father had had no contact of any type with his daughter. Although he had stated that he was Everette's father, he had made no attempt to file paternity proceedings. He had never visited the child or brought gifts. Furthermore, the father had paid nothing in sup-

port for the child and had expressed no interest in the child's welfare.

The probate court terminated respondents' parental rights and placed the child in the permanent custody of the court. The court found that respondent father had not made regular or substantial efforts to communicate with the child and had therefore abandoned and deserted his daughter. The probate court determined that respondent mother was unable to provide proper care and custody for the child because of mental deficiency and that there was no reasonable expectation that she would be able to assume care and custody of the child within a reasonable length of time. The court also found that both parents appeared unable to provide the child with a fit home, by reason of neglect, and there was no reasonable prospect that they would be able to do so in the foreseeable future.

On appeal, respondents argue that § 2(b), MCL 712A.2(b); MSA 27.3178(598.2[b]), and § 19a, MCL 712A.19a; MSA 27.3178(598.19a), are unconstitutionally vague. We note that respondents did not raise this issue before the probate court. Therefore, the issue is not preserved for appellate review in the absence of manifest injustice. *People v Clopton,* 117 Mich App 673, 675; 324 NW2d 128 (1982). A parent's right to the custody of his or her children is an element of "liberty" guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. See *In the Matter of LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973), *lv den* 390 Mich 814 (1973). Since manifest injustice to respondents would occur if their parental rights were terminated under an unconstitutional statute, we choose to review respondents' constitutional argument.

Jurisdiction was initially asserted over Everette

pursuant to § 2(b) of the juvenile code, MCL 712A.1 *et seq.;* MSA 27.3178(598.1) *et seq.,* which provides in pertinent part:

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county.

"(1) *Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship;* or

"(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in, or whose mother is unmarried and without adequate provision for care and support." MCL 712A.2(b); MSA 27.3178(598.2[b]).

Section 19a of the juvenile code sets forth the circumstances under which a parent's right to custody and control of his or her child may be permanently severed. In the present case, respondents' parental rights were terminated pursuant to the following subsections:

"Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

\* \* \*

"(b) The child is left with intent of desertion and abandonment by his parent or guardian in the care of another person without provision for his support or without communication for a period of at least 6 months. The failure to provide support or to communi-

cate for a period of at least 6 months shall be presumptive evidence of the parent's intent to abandon the child. If, in the opinion of the court, the evidence indicates that the parent or guardian has not made regular and substantial efforts to support or communicate with the child, the court may declare the child deserted and abandoned by his parent or guardian.

"(c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child.

*    *    *

"(e) The parent or guardian is unable to provide a fit home for the child by reason of neglect." MCL 712A.19a; MSA 27.3178(598.19a).

Respondents argue that § 2(b) as well as § 19a are unconstitutionally vague. Specifically, respondents claim that "fit home", "proper home", "proper care and custody", "mental deficiency or mental illness", and "reasonable expectations and probabilities" are terms which are too vague to permit a person of ordinary or reasonable intelligence to discern what behavior is prohibited by §§ 2(b) and 19a. Respondents also argue that the statute is overbroad and confers too much discretion on the trier of fact.

A statute may be challenged for vagueness on three grounds: (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; and (3) its coverage is overbroad and impinges on First Amendment freedoms. *People v Howell,* 396 Mich 16, 20; 238 NW2d 148 (1976). In the present case, respondents challenge the statute on all three grounds. However, constitutional challenges

on the basis of vagueness, other than those based on First Amendment rights, must be examined in light of the facts of the case at hand. *Howell, supra,* p 21. Moreover, for respondents to have standing to challenge the statute based on overbreadth, the statute must be overbroad in relation to respondents' conduct. One may not challenge a statute on grounds of overbreadth when the statute clearly applies. *People v Green,* 123 Mich App 563, 565; 332 NW2d 610 (1983).[1]

In the present case, there is no question that respondents' conduct clearly fits within the statute. The uncontradicted testimony at the hearing indicated that respondent father had no contact whatsoever with his daughter; he has never seen her, provided for her support, or sent her gifts. Consequently, abandonment, as well as total neglect, was established. As for respondent mother, the fact that the child suffered from drug withdrawal at birth constituted strong evidence in itself of neglect. *In the Matter of Baby X,* 97 Mich App 111; 293 NW2d 736 (1980). In addition, respondent mother had a 20-year history of serious mental problems, which included several commitments to mental institutions, an inability to remember the names of her children, failure to understand that a college education for a four-month-old child was inappropriate, and an inability to otherwise distinguish fantasy from reality. Consequently, even if there may be questions as to the proper application of §§ 2(b) and 19a to other

---

[1] Respondents argue that they have standing to challenge the statute as overbroad because the statute may deter parents from conduct which is constitutionally protected. See *Alsager v District Court of Polk County Iowa,* 406 F Supp 10, 19 (SD Iowa, 1975). Since our Supreme Court has declined to extend such standing to a criminal defendant absent an allegation that the statute impinges on First Amendment rights, we believe we must examine respondents' challenge in relation to respondents' conduct. *People v Howell, supra,* p 20.

cases, it is apparent that respondents' conduct clearly fits within the statute. Therefore, respondents have no standing to argue that the statute is overbroad or that it does not provide fair notice of the conduct proscribed. *People v Green, supra,* pp 565-566.

Respondents also argue that §§ 2(b) and 19a are void for vagueness because the probate judge is given too much discretion for determining whether sufficient grounds for terminating parental rights exist. We note, however, that even where a statute may be susceptible to impermissible interpretations, reversal is not required when the statute can be narrowly construed so as to render it sufficiently definite to avoid vagueness. *People v Harbour,* 76 Mich App 552, 558; 257 NW2d 165 (1977), *lv den* 402 Mich 832 (1977). In the present case, we believe that the decisions of this Court and the Michigan Supreme Court have sufficiently limited the discretion of the probate judge to render the statute as applied to respondents sufficiently definite to withstand a challenge on the ground of vagueness.

Respondents first argue that the use of the term "proper" in §§ 2(b) and 19a is unconstitutionally vague. Respondents rely on *Davis v Smith,* 266 Ark 112; 583 SW2d 37 (1979), where the natural parents' rights were terminated for the reason that the parents failed to provide a "proper home" for the children as required by the Arkansas statute. The court found that whether a home was "unfit" or "improper" was a question about which persons of ordinary intelligence would greatly disagree and that the answer would largely depend on differing social, ethical, and religious views. 266 Ark 123. Consequently, the Arkansas Supreme Court found that the statute was unconstitutionally vague. On the other hand, several courts have

found that the use of the term "proper" was not unconstitutionally vague. See, *e.g., In re* Metteer, 203 Neb 515; 279 NW2d 374 (1979); *In the Matter of VDD, HPD, LJD, and LGD,* 278 NW2d 194 (SD, 1979); *In re JZ,* 190 NW2d 27 (ND, 1971); *State ex rel Health & Social Services Dep't v Natural Father,* 93 NM 222; 598 P2d 1182 (1979). In each of the above cases, the court summarily found that "proper" care or control was a sufficiently definite standard to give parents adequate warning of the type of behavior to be avoided while permitting the lower court sufficient flexibility to evaluate and consider unique factors provided by individual cases. As was recognized by the Michigan Supreme Court in *In the Matter of Taurus F,* 415 Mich 512; 330 NW2d 33 (1982), the word "proper" as used in § 2(b)(1) is defined by the Legislature as the opposite of "improper custody", as set forth in that provision. In determining the precise meaning of "proper", the Supreme Court stated:

"[Section] 2(b)(1) begins by providing that the court may have jurisdiction where the 'parent or other legally responsible person * * * neglects or refuses to provide proper or necessary support, education * * * care necessary for his health, morals, or * * * well-being.' In other words, such neglect or refusal is improper custody warranting the court's taking jurisdiction. But presumably the provision of such support, education, and care would characterize 'proper custody'. Likewise, the opposite of the abandonment (in § 2[b][1]) of a child or providing an unfit home for a child because of 'neglect, cruelty, drunkenness, criminality or depravity' (in § 2[b][2]) would characterize 'proper custody'.

"The rule of *noscitur a sociis, viz.,* known by its associates, indicates that the catch-all phrase 'otherwise without proper custody' must mean custody which is generally of the same category as the other improper custody described in § 2(b), subds (1) and (2), but not the same as any of them." 415 Mich 540-541.

As is evidenced from the above, "proper" as used § 2(b)(1) is not so vague that people of common intelligence must guess at its meaning, nor does it leave the judge free to decide the issue of jurisdiction without legally fixed standards. Even the catch-all phrase "otherwise without proper custody" is limited in its application to the same categories of behavior as are the more specific prohibitions. Accordingly, "proper custody" is not an unconstitutionally vague standard.

The same restrictions placed on "proper" as used in § 2(b)(1) should also apply to the use of that term in § 19a(c). Both §§ 2(b)(1) and 19a(c) of the juvenile code speak of "proper custody". A rational interpretation of the provisions requires that the term as used in § 19a(c) is not to be given a different meaning from that in § 2(b)(1). Therefore, § 19a(c) sets forth a sufficiently clear and definite standard.

The same relationship between provisions can be found to exist between the use of the term "unfit home" and "fit home" in §§ 2(b)(2) and 19a(c). Section 2(b)(2) provides that neglect, cruelty, drunkenness, criminality or depravity by the parent establishes an "unfit" home or environment. Following the reasoning in *Taurus, supra,* the definition of a fit home is the opposite of, or the absence of, the conditions giving rise to the existence of an unfit home. Since § 2(b)(2) delineates the specific grounds on which a probate judge may find a home to be unfit, the statutory standard is not so vague as to be unconstitutional. Moreover, "fit home" as used in § 19a(e) must be interpreted consistently with the limited definition set forth in § 2(b)(2). Accordingly, § 19a(e) is also constitutionally sufficient.

Respondents also argue that "mental deficiency or mental illness" as used in § 19a(c) is an imper-

missibly vague term. The statute indicates that mental illness must be of a kind which makes it impossible for the parent to provide proper care and custody for the child. The provision also requires that the deficiency be of a kind likely to continue for at least two years. Subsection 19a(c) does not allow termination of parental rights simply on the basis of mental illness. Rather, it links the parent's mental illness to that parent's ability to provide proper care for the child. *In the Matter of Atkins,* 112 Mich App 528, 539; 316 NW2d 477 (1982). Consequently, even if "mental illness" is subject to differing interpretations, the requirement that the condition be substantial, prolonged, and adversely affect parenting ability limits termination to cases involving severe psychological disorders. Therefore, § 19a(c) cannot be considered so vague as to permit indiscernible standards or unbridled discretion.

Respondents next argue that § 19a(c) is unconstitutionally vague because the term "reasonable expectation" is incapable of consistent application. A "reasonable expectation" that a certain event will occur has long been recognized as something more than a determination of subjective intent. It requires an objective determination of whether society is prepared to recognize that expectation as reasonable. See *e.g., Montgomery Ward & Co, Inc v NLRB,* 668 F2d 291, 298 (CA 7, 1981). Section 19a(c) provides that parental rights may be terminated if the parent is unable to provide the child with proper care and custody for a period in excess of two years without a reasonable expectation that the parent will be able to resume caring custody within a reasonable period. The probate judge's right to make a subjective determination as to whether a mentally ill or deficient parent will be

able to resume custody and care of the child is limited by the objective constraints of "reasonableness". Moreover, what is "reasonable" is further delineated by the "two year" consideration. Accordingly, there has not been an unlimited grant of discretion to the probate court to determine whether the removal of a child from the custody of a mentally ill or deficient parent is justified.

In light of the foregoing analysis, we conclude that §§ 2(b) and 19a of the juvenile code sufficiently delineate standards for the assertion of probate court jurisdiction and the termination of parental rights so as to withstand constitutional challenge. Moreover, since respondents' conduct is clearly within the proscriptions of the statute, they are not entitled to reversal of the probate court's order terminating their parental rights.

Affirmed.