Whitbeck, P.J.
 

 Defendant 12th District Court appeals as of right an opinion and order entered by the Jackson Circuit Court with regard to plaintiffs Gerald and Leona Gosnell and Kip Reichard’s complaint for an order of superintending control. We reverse and remand.
 

 I. basic facts and procedural history
 

 A. THE GOSNELL PEACE BOND PROCEEDINGS
 

 This case arises out of peace bond proceedings originally handled by 12th District Court Judge James M. Justin. In the proceedings involving plaintiffs Gerald and Leona Gosnell, Louise Taylor sought the peace bond for an alleged breach of the peace occurring in September 1995. Apparently, the Gosnells and the Taylors, who lived across the street from each other, had difficulty getting along and each sought peace bonds against the other. On the basis of the problems alleged by the parties, Judge Justin concluded that a peace bond was needed. Mr. Gosnell agreed to sign the peace bond in order to prevent being sent to jail, which Judge Justin had indicated were the general options.
 

 In early May 1996, the matter was again before Judge Justin on an alleged violation of the peace bond by Mr. Gosnell. Mr. Gosnell, proceeding in propria persona, denied the accusation and Judge
 
 *329
 
 Justin set the matter for a hearing the following day, during which Mr. Gosnell again proceeded in propria persona. During the hearing, Mr. Gosnell inquired whether he could discuss the case with the local newspaper. Judge Justin responded that such action would be in violation of the peace bond. Judge Justin agreed to continue the matter for several weeks so that two potential witnesses could be subpoenaed. However, at the next hearing in late May 1996, where Mr. Gosnell was represented by counsel, that counsel indicated that he was satisfied that the witnesses had nothing to offer. Counsel further requested Judge Justin to reconsider the necessity for the peace bond, arguing that the peace bond statute had not been complied with by the court. Judge Justin requested counsel to file a written motion regarding the matter, but never ruled with regard to the matter because of the complaint for an order of superintending control filed in the interim.
 

 B. THE REICHARD PEACE BOND PROCEEDINGS
 

 In the proceedings involving plaintiff Kip Reichard, Cynthia Edwards filed a complaint for a peace bond in May 1996, for an alleged breach of the peace occurring from late April 1996 to the middle of May 1996. Proceedings in the Reichard matter began in September 1996, with all parties proceeding in propria persona. This matter also apparently concerned a dispute between neighbors that arose during the Reichards’ divorce proceedings. At the conclusion of the hearing, Judge Justin determined that Mr. Reichard’s conduct required a peace bond in the amount of $100,000.
 
 [1]
 

 
 *330
 
 In late September 1996, a hearing was held with regard to a violation of Mr. Reichard’s peace bond, which allegedly occurred on the same day he signed the peace bond. Mr. Reichard denied that he had violated the peace bond and the matter was set for hearing in early October 1996. However, Judge Justin never ruled with regard to the matter because plaintiffs filed a complaint for an order of superintending control.
 

 C. THE COMPLAINT FOR AN ORDER OF SUPERINTENDING CONTROL AND SUBSEQUENT PROCEEDINGS
 

 Plaintiffs’ complaint for an order of superintending control alleged that Judge Justin exceeded his authority in failing to advise plaintiffs that they had the right to a jury trial or a bench trial, in failing to advise them that they had the right to counsel and that counsel could be appointed if they were indigent, in failing to advise them of the right to call and question witnesses, in failing to advise them of the burden of proof, in failing to comply with the provisions for a violation hearing, in threatening Mr. Gosnell with jail if he refused to sign the peace bond, in acting as both prosecutor and judge, in violating Mr. Gosnell’s constitutional rights by prohibiting him from discussing the matter with anyone but the police, and in setting Mr. Reichard’s pretrial bond at $100,000. The complaint further alleged that the general policies of Judge Justin regarding peace bonds violated the constitution, statutes, and court rules.
 

 On the day the complaint was filed, the circuit court issued an order to show cause and stayed all peace bond proceedings. The circuit court conducted a hearing regarding the complaint in early November 1996. Plaintiffs’ counsel requested that the 12th Dis
 
 *331
 
 trict Court be ordered to produce all their peace bonds “because who knows what secret files are going on down there.” Plaintiffs’ counsel argued that none of the 12th District Court judges should be dismissed from the action because they had done nothing to prevent Judge Justin’s actions, “let[ting] him run amuck.” Plaintiffs’ counsel further stated:
 

 The suspension of the constitution of the civil liberties of every person driving through this county or walking through or living in this county goes on in a tiny little room on the second floor of this courthouse, and none of those other judges seem to care one bit about it. So should they be dismissed? No. They should have their feet held to the fire in the cause of justice just like Judge Justin.
 

 Plaintiffs’ counsel characterized the 12th District Court as “infested with hypocrisy like an old tree is infested with termites” and argued:
 

 There’s only one way to stop that. That’s with light, and we need the continuation of your order so that Judge Justin doesn’t touch a single piece [sic] bond file. We need a disclosure of every single peace bond file they’ve had since the last time I took them to the Court of Appeals and they had to behave like judges instead of back-alley deal makers.
 
 [2]
 

 When the circuit court expressed concern about the constitutionality of the peace bond statute to defendant’s counsel, plaintiffs’ counsel requested to amend plaintiffs’ complaint, subsequently stating that if the court wanted the constitutional issues
 
 *332
 
 addressed, he would be glad to amend the complaint and brief the issues. At the conclusion of the hearing, the circuit court entered an order taking superintending control of the case. The circuit court adjourned the matter until December 1996 for further proceedings and ordered the 12th District Court to provide plaintiffs’ counsel with complete copies of all 12th District Court peace bond cases filed since September 13, 1991. The circuit court also ordered plaintiffs to file an amended complaint by November 8, 1996, and indicated that the parties should exchange briefs addressing all issues, including the question of the constitutionality of the peace bond statute,
 
 [3]
 
 by November 19, 1996.
 
 [4]
 

 D. THE MAY 1997 OPINION
 

 The circuit court issued its opinion and order on May 7, 1997, and concluded that the peace bond statute, MCL 772.1
 
 et seq.;
 
 MSA 28.1154
 
 et seq.,
 
 is unconstitutionally vague. The circuit court further required, in the event that an appellate court determined that the peace bond statute is constitutional, that the 12th
 
 *333
 
 District Court prohibit Judge Justin from being assigned to or hearing any peace bond cases.
 

 n. STANDARD OF REVIEW
 

 A. CONSTITUTIONALITY OF STATUTES
 

 This Court reviews de novo the issue whether a statute is unconstitutionally vague.
 
 Ray Twp v B & BS Gun Club,
 
 226 Mich App 724, 732; 575 NW2d 63 (1997).
 

 B. ABUSE OF DISCRETION
 

 This Court reviews a decision to grant or deny an order of superintending control for an abuse of discretion.
 
 In re Goehring,
 
 184 Mich App 360, 366; 457 NW2d 375 (1990).
 

 C. NOTICE UNDER THE COURT RULES
 

 This Court reviews interpretation of court rules de novo as a question of law.
 
 Auto Club Ins Ass’n v General Motors Corp,
 
 217 Mich App 594, 598; 552 NW2d 523 (1996).
 

 m. THE CONSTITUTIONALITY OF THE PEACE BOND STATUTE
 

 A. GENERAL PRINCIPLES OF JUDICIAL DEFERENCE
 

 As has been said in another context, there is almost universal agreement that the power of the Legislature is not without limits. See
 
 Marbury v Madison,
 
 5 US (1 Cranch) 137, 176; 2 L Ed 60 (1803): “[T]hat those limits may not be mistaken, or forgotten, the constitution is written.” And, as the Michigan Supreme Court stated in
 
 Manistee Bank & Trust Co v McGowan,
 
 394 Mich 655, 666; 232 NW2d 636 (1975): “[T]hat those limits not be exceeded, the courts are entrusted with the responsibility to review and the power to nullify
 
 *334
 
 legislative acts which are repugnant to the constitution.” Nevertheless we are to use this authority sparingly. “[U]nder established rules of statutory construction, statutes are presumed constitutional, and courts have a duty to construe a statute as constitutional unless unconstitutionality is clearly apparent.”
 
 Mahaffey v Attorney General,
 
 222 Mich App 325, 344; 564 NW2d 104 (1997).
 

 B. CHALLENGES REGARDING VAGUENESS
 

 A statute may be unconstitutionally vague if:
 

 (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; and (3) its coverage is overly broad and impinges on First Amendment freedoms.
 
 [People v Morey,
 
 230 Mich App 152, 163; 583 NW2d 907 (1998).]
 

 Accord,
 
 Ray Twp, supra
 
 at 732.
 

 Vagueness challenges not involving First Amendment freedoms are analyzed in light of the facts of the particular case.
 
 Id.
 
 To provide fair notice of the conduct proscribed, the statute “ ‘must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. The statute cannot use terms that require persons of common intelligence to guess at the statute’s meaning and differ regarding its application.’ ”
 
 People v Perez-DeLeon,
 
 224 Mich App 43, 46; 568 NW2d 324 (1997) (citation omitted). However, a statute is not vague if the meaning of the disputed words “can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning.”
 
 *335
 

 People v Cavaiani,
 
 172 Mich App 706, 714; 432 NW2d 409 (1988).
 

 C. FAIR NOTICE
 

 The circuit court ruled that the peace bond statute failed to provide fair notice regarding the prohibited conduct. The court found that although the term “conserving the peace” is of ancient origin, such a term failed to provide a description of what conduct constituted a breach of the peace. Further, the circuit court noted that there was no city ordinance involved defining breach of the peace. Because there are differing opinions regarding what constitutes a breach of the peace, the circuit court ruled that the peace bond statute “utterly fails to provide notice to a respondent as to what conduct is prohibited.” We disagree.
 

 MCL 772.1; MSA 28.1154 states:
 

 A district or municipal judge may cause all the laws made for the preservation of the public peace to be kept and, in the execution of this authority, may require a person to give security to keep the peace in the manner provided in this chapter.
 

 In interpreting what the “preservation of the public peace” means, we first note that MCL 772.2; MSA 28.1155 provides:
 

 If a complaint is made in writing and on oath to the district court or a municipal court that
 
 a person has threatened, to commit an offense against the person or property of another,
 
 the judge shall examine on oath the complainant and any witnesses who may be produced. [Emphasis added.]
 

 The circuit court failed to address the effect of this language anywhere in its May 1997 opinion. However,
 
 *336
 
 while the range of potential offenses that could be committed against a person or the person’s property may be broad, this does not equate with a finding that the peace bond statute itself is unconstitutionally vague. To the contrary, this language rather clearly provides fair notice that the conduct with which the peace bond statute is concerned is threatening “to commit an offense against the person or property of another . . . .”
 

 Moreover, the common-law definition of breach of the peace is instructive. In the lead opinion in Ware
 
 v Branch Circuit Judge,
 
 75 Mich 488, 492-493; 42 NW 997 (1889) (Campbell, J., joined by Champlin, J.), Justice Campbell explained that breaches of the peace typically involved open disturbance in public places. For those cases not concerning open disturbance in a public place, personal violence, either actually inflicted or immediately threatened, was required.
 
 Id.
 
 In
 
 People v Johnson,
 
 86 Mich 175, 177; 48 NW 870 (1891), the Court stated:
 

 In general terms the offense is a violation of public order, a disturbance of the public tranquillity, by any act or conduct inciting to violence, or tending to provoke or excite others to break the peace. Each case where the offense is charged must depend upon the time, place, and circumstances of the act.
 

 Additionally, this Court has explained:
 

 A “breach of the peace” has been defined in Michigan as any intentional violation of the natural right of all persons in a political society to the tranquillity enjoyed by citizens of a community where good order reigns among its members.
 
 [Dearborn Heights v Bellock,
 
 17 Mich App 163, 168; 169 NW2d 347 (1969).]
 

 
 *337
 
 Applying this common law to the statute at issue, we further construe the peace bond statute to apply to offenses against the person or property of another that involve some threat of personal violence. Consequently, we conclude that the peace bond statute provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited. We hold therefore that the peace bond statute is not constitutionally infirm.
 
 [5]
 

 D. DISTINGUISHING BETWEEN EXECUTIVE DUTIES AND JUDICIAL DUTIES
 

 The circuit court concluded that the peace bond statute was unconstitutional because it failed to distinguish between executive duties to bring charges and judicial duties to hear charges. The court reasoned that the same judge who takes the initial complaint may hear the entire case and therefore found that the peace bond statute lacked the necessity recognized by Michigan statutes that there be an independent executive authority in bringing charges.
 
 [6]
 
 However, in so holding, the circuit court failed to consider this Court’s holding in
 
 In re Rupert,
 
 205
 
 *338
 
 Mich App 474, 480; 517 NW2d 794 (1994), where we determined that the peace bond statutes “do not necessarily require the involvement of the prosecutor’s office, nor, on their face, do they require the appointment of counsel.” Although this Court refused to conclude that such requirements could never be imposed, the circuit court cited nothing in the record that would permit it to determine that the prosecutor’s office was required to become involved or that counsel was required to be appointed in the actions in the district court.
 
 Id.
 
 at 480, n 1. Therefore, under
 
 Rupert,
 
 the circuit court’s reasoning with regard to this issue was erroneous. Accordingly, we conclude that the peace bond statute is not unconstitutional on this basis.
 

 E. UNFETTERED DISCRETION
 

 The circuit court found that the peace bond statute was unconstitutional and violative of due process because it conferred unlimited discretion to incarcerate a party, permitting a district court judge to incarcerate a person in excess of one year. The circuit court concluded that the ability to sentence for up to five years was not authorized because jurisdiction for the district court was one year.
 

 In reaching this conclusion, the circuit court ignored the Michigan Supreme Court’s decision in
 
 In re Sanderson,
 
 289 Mich 165; 286 NW 198 (1939). In
 
 Sanderson,
 
 the defendant, after threatening to kill another person, was required to enter into a recognizance of $500 to keep the peace for nine months.
 
 Id.
 
 at 167. After failing to pay costs or give the recognizance, the defendant was sentenced to jail for nine months or until he gave the required recognizance
 
 *339
 
 and paid the required costs.
 
 Id.
 
 The defendant argued that his imprisonment was illegal because the sentence was for a longer term than the justice of the peace could impose and that the limit of the jurisdiction of the justice of the peace was to sentence the defendant for three months.
 
 Id.
 
 at 167-168. However, the Court rejected the defendant’s argument, concluding:
 

 The authority of a justice of the peace to compel one who has threatened to Mil another to give security to keep the peace is entirely separate and distinct from the performance of ordinary judicial functions. The Constitution of this State provides that justices of the Supreme Court, circuit judges and justices of the peace shall be conservators of the peace within their respective jurisdictions. [Const 1908, art 7, § 18], [Sanderson, at 169.]
 
 [7]
 

 The Court noted that the statute in existence at the time permitted the defendant to be jailed for up to two years, the period for which a defendant could be required to give a surety.
 
 Id.
 
 at 177-178.
 
 [8]
 
 The Court concluded that the statute was authorized under Const 1908, art 7, § 18 and that the justice of the peace did not exceed his jurisdiction by acting within the terms of the statute.
 
 Id.
 
 at 178-179.
 

 Applying
 
 Sanderson
 
 to the present case, we conclude that the peace bond statute is not unconstitu
 
 *340
 
 tional because it permits a district court judge to incarcerate a defendant for up to five years. The district court judge’s authority to require security to keep the peace is separate and distinct from the performance of the judge’s ordinary judicial functions. Consequently, a district court judge would not exceed the judge’s jurisdiction by acting within the peace bond statute. Moreover, the peace bond statute does not provide unfettered discretion to incarcerate a party. Rather, MCL 772.6; MSA 28.1159 states, in pertinent part:
 

 If the person so ordered to recognize refuses or neglects to provide that recognizance, the court shall commit the person to the county jail during the period for which security was required, or until the person provides that recognizance. A person shall not be incarcerated for failure to pay the recognizance unless the court conducts a hearing and determines that the person has the resources to pay the recognizance and has not made a good faith effort to do so. In determining whether to incarcerate the person, the court shall also consider the person’s employment status, earning ability, and financial resources; the willfulness of the person’s failure to pay the recognizance; and any other special circumstances that may have a bearing on the person’s ability to pay the recognizance.
 

 Not only does the peace bond statute require a hearing before a person can be incarcerated for failure to pay, it also enumerates the criteria that should be considered in making that determination. Therefore, we conclude that the circuit court erred in finding the peace bond statute unconstitutional on the basis that it provides unlimited discretion to incarcerate for an indeterminate period exceeding one year.
 

 
 *341
 
 IV. ABUSE OF DISCRETION
 

 A. GENERAL PRINCIPLES
 

 Superintending control is an extraordinary power that may be invoked when the plaintiff demonstrates the defendant’s failure to perform a clear legal duty and the absence of an adequate legal remedy.
 
 In re Recorder’s Court Bar Ass’n v Wayne Circuit Court,
 
 443 Mich 110, 134; 503 NW2d 885 (1993);
 
 In re People v Burton,
 
 429 Mich 133, 139; 413 NW2d 413 (1987);
 
 [9]
 

 Lockhart v Thirty-Sixth Dist Court Judge,
 
 204 Mich App 684, 688; 516 NW2d 76 (1994);
 
 Czuprynski v Bay Circuit Judge,
 
 166 Mich App 118, 121-122; 420 NW2d 141 (1988). An order of superintending control replaces writs of certiorari (as directed against a lower court or tribunal), mandamus, and prohibition, MCR 3.302(C), and, like certiorari, is used to determine “ ‘if the inferior tribunal, upon the record made, had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law.’ ”
 
 Burton, supra
 
 at 139, quoting
 
 Genesee Prosecutor v Genesee Circuit Judge,
 
 386 Mich 672, 681; 194 NW2d 693 (1972), quoting
 
 In re Fredericks,
 
 285 Mich 262, 267; 280 NW 464 (1938). The review is limited to questions of law and is not available when the plaintiff has an adequate legal remedy through an appeal.
 
 Burton, supra
 
 at 139;
 
 Barham v Workers’ Compensation Appeal Bd,
 
 184 Mich App 121, 127; 457 NW2d 349 (1990). When an appeal is available, the complaint for an order of superintending control must be dismissed. MCR 3.302(D)(2). However, a party may not
 
 *342
 
 have an adequate remedy where the party is challenging the general policies of the district court.
 
 Moore v Ninth Dist Judge,
 
 69 Mich App 16, 18-19; 244 NW2d 346 (1976); see also
 
 Rupert, supra
 
 at 478-479. It is the plaintiff who bears the burden of establishing the grounds for issuing the order.
 
 Id.
 
 at 478.
 

 B. ACTIONS OF CONTINUING CONDUCT
 

 The circuit court determined that, under
 
 Rupert,
 
 superintending control was the appropriate method for resolving an issue concerning actions of continuing conduct. We do not agree that this was such a situation. Although
 
 Rupert
 
 evidences that there was concern in the past because Judge Justin established his own procedures for issuing peace bonds that were not consistent with the procedures outlined in the peace bond statute, plaintiffs here failed to offer
 
 any
 
 evidence that Judge Justin continued to follow a general policy inconsistent with the peace bond statute after this Court issued its opinion in
 
 Rupert.
 
 This Court agreed in
 
 Rupert
 
 that an order of superintending control must be supported by the record.
 
 Id.
 
 However, unlike
 
 Rupert,
 
 plaintiffs here did not attach various examples of peace bonds issued by the 12th District Court.
 

 Although plaintiffs were permitted to review all peace bond cases since September 1991, plaintiffs failed to amend their complaint or offer evidence from these records to support their allegations. The only peace bonds attached to their complaint concerned plaintiffs. Plaintiffs suggested that Mr. Reichard’s peace bond violated the statute because Judge Justin initially imposed a $100,000 bond. However, this bond was reduced to $5,000, apparently on
 
 *343
 
 Judge Justin’s own initiative. Moreover, while defendant concedes that it was improper to tell Mr. Gosnell that he could be jailed if he refused to sign the peace bond because the peace bond statute requires a hearing before the district court could take such action, we find that this one instance of noncompliance does not establish that defendant continued to adhere to a general policy inconsistent with the peace bond statute. Therefore, we conclude that the circuit court abused its discretion in granting the order of superintending control because plaintiffs failed to establish that there was a continuing pattern of noncompliance with the peace bond statute.
 

 V. NOTICE UNDER THE COURT RULES
 

 MCR 3.302(E)(1) states:
 

 A person seeking superintending control in the circuit court must file a complaint with the court. Only the plaintiff’s name may appear in the title of the action (for example,
 
 In re Smith).
 
 The plaintiff must serve a copy of the complaint on the court or tribunal over which superintending control is sought. If the superintending control action arises out of a particular action, a copy of the complaint must also be served on each other party to the proceeding in that court or tribunal.
 

 The circuit court ruled that service upon the parties to the peace bond actions was not necessary because the service requirement applied only to a superintending control action arising out of a particular action. The circuit court stated, “[w]hile we have more than ‘a’ action before us, what is more important is that we have a long-standing and continuing pattern of conduct by ‘a’ judge. Thus, it is not ‘a particular action’
 
 *344
 
 which is of import but, rather, ‘a particular judge.’ ”
 
 [10]
 
 We disagree.
 

 Service was required under the rule because, even if the focus was a continuing pattern of conduct by the judge, the complaint for an order of superintending control arose out of two particular actions: the peace bond proceeding initiated by Ms. Taylor and the peace bond proceeding initiated by Ms. Edwards. The peace bonds had not yet expired at the time the complaint for an order of superintending control was filed. Therefore, under the rule, Ms. Taylor and Ms. Edwards should have been served with the complaint for an order of superintending control.
 

 However, we do not believe that dismissal of the action was justified on this basis. Defects in service of process will generally not warrant dismissal “unless the service failed to inform the defendant of the action within the time provided in these rules for service.” MCR 2.105(J)(3);
 
 In re Gordon Estate,
 
 222 Mich App 148, 157-158; 564 NW2d 497 (1997). Defendant here was served with the complaint for an order of superintending control. Therefore, we conclude that the circuit court did not err in refusing to dismiss the complaint on this basis.
 

 Reversed and remanded to the circuit court for further actions consistent with this opinion. We do not retain jurisdiction.
 

 [1]
 

 However, the peace bond later signed by Mr. Reichard and approved by Judge Justin was for $5,000.
 

 [2]
 

 When plaintiffs’ counsel mentioned this Court, he was referring to the case of
 
 In re Rupert,
 
 205 Mich App 474; 517 NW2d 794 (1994), which also involved an order of superintending control regarding Judge Justin’s peace bond procedure. Plaintiffs’ counsel was also counsel for the plaintiffs in that case.
 

 [3]
 

 This Court has addressed the issue whether peace bonds were authorized by the peace bond statute.
 
 Rupert,
 
 n 2,
 
 supra
 
 at 479-480. However, although it appears that the constitutionality of the peace bond statute was challenged by the parties, neither the trial court nor this Court addressed that issue.
 

 [4]
 

 On November 7, 1996, the circuit court issued an order amending the time frame for the case because of the number of peace bond cases handled by the 12th District Court since 1991. The subsequent order granted plaintiffs’ counsel ninety days to file an amended complaint, defendant’s counsel thirty days from the filing of the amended complaint to file an amended answer, and the parties ninety days from the filing of the amended answer to file legal briefs At the time the circuit court issued its opinion in May 1997, plaintiffs’ counsel had not filed an amended complaint. The circuit court noted that defendant’s counsel had filed a brief.
 

 [5]
 

 Compare
 
 People v Gagnon,
 
 129 Mich App 678, 682-684; 341 NW2d 867 (1983), in which this Court concluded that the provision of the disorderly person statute, MCL 750.167(1)(e); MSA 28.364(l)(e), that provided that a “disorderly person” included one “who is intoxicated in a public place and who is either endangering directly the safety of another person or of property or is acting in a manner that causes a public disturbance,” was unconstitutionally vague as applied in that case because it provided no standards regarding what constituted a public disturbance. To avoid striking down the entire statute, this Court construed the public disturbance provision “to require a finding that an accused, while intoxicated, directly endangered the safety of another person or of property as requisite to a finding of guilty of causing a public disturbance while intoxicated.”
 
 Gagnon,
 
 at 684. One judge dissented from this conclusion.
 
 Id.
 
 at 684-685.
 

 [6]
 

 The circuit court cited no authority to support its analysis in this section of the May 1997 opinion.
 

 [7]
 

 The substance of Const 1908, art 7, § 18 is now contained in Const 1963, art 6, § 29, which states:
 

 Justices of the supreme court, judges of the court of appeals, circuit judges and other judges as provided by law shall be conservators of the peace within their respective jurisdictions.
 

 [8]
 

 This provision was amended in 1994 to provide for a period not exceeding five years. MCL 772.4(2); MSA 28.1157(2).
 

 [9]
 

 Burton
 
 was superseded by statute to the extent that the prosecution had no authority to appeal an order granting a new trial at the time the case was decided. See
 
 Schomaker v Armour, Inc,
 
 217 Mich App 219, 222-225; 550 NW2d 863 (1996).
 

 [10]
 

 We note that the circuit court cited no authority to support its reasoning.