CITY OF OWOSSO v POUILLON

Docket No. 236837. Submitted November 6, 2002, at Lansing. Decided December 3, 2002, at 9:00 A.M. Leave to appeal denied, 468 Mich 893.

James L. Pouillon pleaded no contest in the 66th District Court, Ward L. Clarkson, J., to a charge of causing public disorder on the condition that he be allowed to challenge on appeal the constitutionality of the Owosso city ordinance under which he was prosecuted. The ordinance makes it a misdemeanor to wilfully use abusive or obscene language or make an obscene gesture to another person when such words by their very utterance inflict injury or tend to incite an immediate breach of the peace, provided that it is done with the purpose of causing public danger, alarm, disorder, or nuisance, or that the nature of the conduct is likely to cause public danger, alarm, disorder, or nuisance. The defendant, while standing on city property, had yelled, "They kill babies in that church! Why are you going in there?" to children being dropped off at a church-operated day care and preschool. The Shiawassee Circuit Court, Martin E. Clements, J., upheld the conviction after rejecting the defendant's constitutional challenges regarding the validity of the ordinance and its application to him. The Court of Appeals denied the defendant leave to appeal the circuit court decision. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 465 Mich 877 (2001).

The Court of Appeals *held*:

1. The ordinance is content-neutral, is narrowly tailored to serve the significant governmental interest of protecting the health and safety of citizens, and thus is a constitutional time, place, and manner restriction on speech. Regardless of the speaker's subject matter or underlying message, abusive or obscene language spoken with the requisite intent may be prohibited when such words by their very utterance inflict injury or tend to incite an immediate breach of the peace.

2. The ordinance is not unconstitutionally vague. The ordinance is not overbroad because it makes no content-based distinctions and is narrowly drawn and limited to define and punish only "fight-

ing words," i.e., abusive or obscene language whose utterance inflicts injury or tends to incite an immediate breach of the peace. The ordinance's incorporation of the extensively construed definition of "fighting words" precludes a finding that the ordinance fails to provide fair notice of prohibited conduct. The ordinance does not confer on the finder of fact unstructured and unlimited discretion to determine whether an offense has been committed.

3. The ordinance was unconstitutional as applied to the defendant. The exclusion of fighting words from the scope of the First Amendment simply means that the unprotected features of the words are essentially a nonspeech element of communication subject to state regulation because they do not constitute an essential part of any expression of ideas. On their face, the defendant's words do not appear to have anything to do with abortion. However, accepting that exaggeration and creativity are used to express ideas, the Court of Appeals concludes that the defendant's comments concerned abortion and thus involved a matter of public concern and were made in a traditional public forum, which would normally constitute protected speech. Although the defendant's words caused emotional upset to the children, they were not words that by their very utterance inflict injury of the type that courts have seen fit to prevent through the fighting words exception to the First Amendment. Because the children were unlikely to retaliate, the defendant's words lacked any tendency to incite an immediate breach of the peace.

4. Because the defendant, when conditionally pleading no contest, did not specifically preserve the question whether the trial court properly quashed certain subpoenas, the subpoena issue was waived by the defendant's plea.

Reversed.

*William C. Brown*, City Attorney, for the city of Owosso.

*J. Kevin McKay* for the defendant.

Before: WHITBECK, C.J., and HOOD and KELLY, JJ.

PER CURIAM. Defendant entered a conditional plea of no contest to causing public disorder, contrary to § 19-82 of the Owosso City Code. He was sentenced to one year's probation. The Shiawassee Circuit Court upheld the conviction. This Court denied defendant's

application for leave to appeal. Subsequently, in lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration as on leave granted. *Owosso v Pouillon*, 465 Mich 877 (2001). We reverse.

### I. BACKGROUND FACTS AND PROCEEDINGS

This case arises from an incident in which defendant stood, on city property, approximately thirty feet from the front of a dentist's office and approximately three hundred feet away from a church. As mothers were dropping off their children at the day care/preschool operated by the church, defendant yelled, "They kill babies in that church! Why are you going in there?" According to the police report used to establish the factual basis of the no contest plea, the children became frightened and visibly upset. Defendant claimed that he chose his location near the dentist office because the dentist publicly supported Planned Parenthood and abortion. Defendant claimed that he opposed the church because, several years before, it held an anniversary celebration for Planned Parenthood. Defendant has a history of persistently "protesting abortion" while directing statements at people or businesses with whom he has had previous relationships.[1]

Defendant was charged with causing public disorder under § 19-82 of the Owosso City Code. Defendant tendered a conditional no contest plea before

---

[1] In *Rowlison v Poullion* (Court of Appeals Docket No. 229733), submitted with this case, defendant's protests in front of a car dealership, owned by his former father-in-law, extended to shouting at a pregnant employee, "Is that a baby or a bomb; [d]id you tell them about the bomb; [b]etter watch out, God will drop a bomb on you."

the district court. The conditions placed on the record preserved his defenses to the charge, including his contention that the ordinance did not serve a compelling state interest, was vague and overbroad, and was unconstitutional as applied to him.

## II. STANDARD OF REVIEW

Constitutional questions are reviewed de novo. *In re Hawley*, 238 Mich App 509, 511; 606 NW2d 50 (1999). Statutes are presumed to be constitutional unless their unconstitutionality is clearly apparent. *In re AH*, 245 Mich App 77, 82; 627 NW2d 33 (2001). Statutes must be construed as proper under the constitution if possible. *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000). The party opposing the statute bears the burden of overcoming the presumption and proving the statute unconstitutional. *Id.*; *In re AH*, *supra* at 82.

## III. TIME, PLACE, AND MANNER RESTRICTIONS

Defendant first argues that the ordinance impermissibly restricted his freedom of speech and was unconstitutional for a lack of a compelling governmental interest. We disagree.

The Michigan Constitution states, "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5. The First Amendment of the United States Constitution similarly states that "Congress shall make no law . . . abridging the freedom of speech." US Const, Am I. The rights to free speech

under the Michigan and federal constitutions are coterminous. *Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 168; 533 NW2d 339 (1995). Thus, federal authority construing the First Amendment may be used in construing Michigan's constitutional free speech rights. See *id.* at 168-169.

Defendant was charged under § 19-82 of the Owosso City Code, which provides:

> A person shall be deemed guilty of a misdemeanor if, with the purpose of causing public danger, alarm, disorder or nuisance, or if his or her conduct is likely to cause public danger, alarm, disorder or nuisance, such person willfully uses abusive or obscene language or makes an obscene gesture to any other person when such words by their very utterance inflict injury or tend to incite an immediate breach of the peace.

The ordinance is content-neutral because it applies to all speech " 'without reference to the content of the regulated speech.' " *Madsen v Women's Health Ctr*, 512 US 753, 763; 114 S Ct 2516; 129 L Ed 2d 593 (1994), quoting *Ward v Rock Against Racism*, 491 US 781, 791; 109 S Ct 2746; 105 L Ed 2d 661 (1989). Regardless of the speaker's subject matter or underlying message, "abusive or obscene" language spoken with the requisite intent may be prohibited "when such words by their very utterance inflict injury or tend to incite an immediate breach of the peace." See *RAV v St Paul*, 505 US 377, 381, 383-384, 386; 112 S Ct 2538; 120 L Ed 2d 305 (1992). The ordinance at issue does not restrict access to other channels of communication. See *Up & Out, supra* at 173. Further, it is well settled that the state has a significant interest in protecting the health and safety of its citizens. *Hill v Colorado*, 530 US 703, 715; 120 S Ct 2480; 147 L Ed 2d

597 (2000); *Schenck v Pro-Choice Network*, 519 US
357, 371, 375-376; 117 S Ct 855; 137 L Ed 2d 1 (1997).
In light of the foregoing, and because the ordinance is
" 'narrowly tailored to serve a significant government
interest,' " it is a constitutional time, place, and man-
ner restriction. *Madsen, supra* at 764, quoting *Ward,
supra* at 791; see also *Hill, supra* at 725-726.

### IV. UNCONSTITUTIONALLY VAGUE

Defendant next argues that the ordinance was
unconstitutionally vague. We disagree.

"[T]here are at least three ways a . . . statute may
be found unconstitutionally vague: (1) failure to pro-
vide fair notice of what conduct is prohibited, (2)
encouragement of arbitrary and discriminatory
enforcement, or (3) being overbroad and impinging
on First Amendment freedoms." *People v Lino*, 447
Mich 567, 575-576; 527 NW2d 434 (1994); see also *Peo-
ple v White*, 212 Mich App 298, 309-313; 536 NW2d 876
(1995); *In re Gentry*, 142 Mich App 701, 707; 369
NW2d 889 (1985). The second prong includes confer-
ring " 'unstructured and unlimited discretion . . . to
determine whether an offense has been committed.' "
*White, supra* at 309, quoting *Michigan State AFL-CIO
v Civil Service Comm (After Remand)*, 208 Mich
App 479, 492; 528 NW2d 811 (1995), rev'd on other
grounds 455 Mich 720; 566 NW2d 258 (1997).

In addition to prescribing reasonable time, place,
and manner restrictions, the government remains free
to impose "restrictions upon the content of speech in
a few limited areas, which are 'of such slight social
value as a step to truth that any benefit that may be
derived from them is clearly outweighed by the social

interest in order and morality.' " *RAV, supra* at 382-383, quoting *Chaplinsky v New Hampshire*, 315 US 568, 572; 62 S Ct 766; 86 L Ed 1031 (1942) (allowing the regulation of "fighting words"). In this case, the ordinance tracks the definition of "fighting words" by prohibiting "abusive or obscene" language "when such words by their very utterance inflict injury or tend to incite an immediate breach of the peace." See *Chaplinsky, supra* at 572.[2] The ordinance makes no content-based distinctions and is "narrowly drawn and limited to define and punish" only fighting words. See *Chaplinsky, supra* at 573-574. Thus, the ordinance does not "sweep[] too broadly, covering a substantial amount of protected free speech," nor does "every application . . . create[] an unreasonable risk of censorship." See *Up & Out, supra* at 170. Therefore, on its face, the ordinance is not unconstitutionally overbroad.

Regarding defendant's fair notice argument, we conclude that the incorporation of the extensively construed definition of "fighting words" precludes a

---

[2] We note that in *Burns v Detroit (On Remand)*, 253 Mich App 608; ___ NW2d ___ (2002), this Court opined that, since *Chaplinsky*, the definition of "fighting words" has been somewhat modified, stating, "It now includes only the second half of the definition—words that tend to incite an immediate breach of the peace . . . ." *Burns, supra* at 621, n 8, citing *UWM Post, Inc v Univ of Wisconsin Sys Bd of Regents*, 774 F Supp 1163, 1170 (ED Wis, 1991). The court in *UWM Post* determined that the Supreme Court "reduced the scope of fighting words to include only words which tend to incite an immediate breach of the peace." *Id.*, citing *Gooding v Wilson*, 405 US 518, 524; 92 S Ct 1103; 31 L Ed 2d 408 (1972). However, we note that in several cases after *Gooding*, the Supreme Court cited *Gooding*, holding that "fighting words" include both "those [words] which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Lewis v New Orleans*, 415 US 130, 132; 94 S Ct 970; 39 L Ed 2d 214 (1974); see also *Houston v Hill*, 482 US 451, 462; 107 S Ct 2502; 96 L Ed 2d 398 (1987); *Karlan v Cincinnati*, 416 US 924, 927; 94 S Ct 1922; 40 L Ed 2d 280 (1974).

finding that this ordinance is impermissibly vague.[3] See *Lino, supra* at 575; see also *In re Gosnell*, 234 Mich App 326, 334; 594 NW2d 90 (1999). Further, because the ordinance is not vague, it does not confer unstructured and unlimited discretion on the trier of fact. *White, supra* at 313.

### V. UNCONSTITUTIONAL AS APPLIED

Defendant also argues that the ordinance was unconstitutional as applied to him. We agree.

Fighting words are "words likely to cause an average addressee to fight." See *Chaplinsky, supra* at 573. The rationale behind the fighting words exception is that certain words or phrases, when directed toward another, may be regulated consistent with the First Amendment because of their constitutionally proscribable content. See *RAV, supra* at 383. The exclusion of fighting words from the scope of the First Amendment simply means that the unprotected features of the words are essentially a nonspeech element of communication subject to state regulation because they do not constitute an essential part of any expression of ideas. See id. at 385.

According to the police report, which defendant agreed could be used to establish a factual basis for his plea, the children entering the church "were visibly frightened and upset" when defendant told them

---

[3] Compare *People v Boomer*, 250 Mich App 534, 539-542; 655 NW2d 255 (2002), in which this Court held that a statute criminalizing the use of "indecent, immoral, obscene, vulgar or insulting language in the presence or hearing of any woman or child" was unconstitutionally vague on its face because, given that reasonable persons could differ concerning what is "indecent, immoral, obscene, vulgar or insulting," the statute failed to provide fair notice of what conduct was prohibited.

that "[t]hey kill babies in that church! Why are you going in there?" The message relayed by defendant's words was that babies were killed in the church and that children should not go there. On their face, defendant's words do not appear to have anything to do with abortion. However, accepting that exaggeration and creativity are used to express ideas, we conclude that defendant's comments concerned abortion and thus involved a matter of public concern and were made in a traditional public forum, which comments would normally constitute protected speech. *Schenck, supra* at 377.

The prosecutor argues, however, that defendant's speech should not be extended constitutional protection because it inflicted emotional injury on the hearers, specifically the children.[4] See *Chaplinsky, supra* at 572. We acknowledge that the government has a substantial interest in protecting children. See *United States v Playboy Entertainment Group, Inc,* 529 US 803, 813-814; 120 S Ct 1878; 146 L Ed 2d 865 (2000); see also *Fed Communications Comm v Pacifica Foundation,* 438 US 726, 749-750; 98 S Ct 3026; 57 L Ed 2d 1073 (1978); *Ginsberg v New York,* 390 US 629, 639-641; 88 S Ct 1274; 20 L Ed 2d 195 (1968).[5]

---

[4] We note that the prosecution does not cite any authority for the proposition that fright constitutes an injury within the purview of the fighting words doctrine, but, rather, argues, "Children are impressionable, and upon hearing that such a thing could occur in a place they visit for spiritual enjoyment and enlightenment, could be, and in this case was, injuring."

[5] In *Playboy,* the Court used a strict scrutiny test to find that a content-based regulation restricting sexually explicit cable television programming was unconstitutional on its face because less restrictive alternatives existed. See *Playboy , supra* at 813-814. In *Pacifica,* the Court held that a radio broadcast of George Carlin's "Filthy Words" monologue was not protected speech, and could have been sanctioned by the FCC. *Pacifica, supra* at 729-735, 744. In *Ginsberg,* the Court upheld state regulations for-

However, the Supreme Court has rejected "the intent to inflict emotional distress" as a basis for regulating otherwise protected speech. See *Hustler Magazine v Falwell*, 485 US 46, 52-57; 108 S Ct 876; 99 L Ed 2d 41 (1988); see also *Chaplinsky, supra* at 572. While content-based distinctions among classes of unprotected speech may be drawn on the basis of their secondary effects, "[t]he emotive impact of speech on its audience is not a 'secondary effect.'" See *RAV, supra* at 389, 394. Thus, emotional distress is not the sort of "injury" referred to in *Chaplinsky* as a basis for regulating speech under the first prong of the definition of "fighting words." *Hustler, supra* at 52-53, 56; see also *Chaplinsky, supra* at 572. Although we believe that defendant's words caused emotional upset to the children, we find that they were not words "which by their very utterance inflict[ed] injury" of the type that our courts have seen fit to prevent through the fighting words exception to the First Amendment. See *Chaplinsky, supra* at 572.

Although the prosecution does not specifically make this argument, an issue encompassed by the arguments on appeal is whether defendant's speech falls under the second part of the definition of "fighting words" in that they tended "to incite an immediate breach of the peace." See *Chaplinsky, supra* at 572. In *Cantwell v Connecticut*, 310 US 296, 301-309; 60 S Ct 900; 84 L Ed 1213 (1940), the defendant was arrested for a breach of the peace in a predominantly Roman Catholic neighborhood after he played a record on the streets that denounced organized relig-

---

bidding the sale of sexually obscene materials to minors. *Ginsberg , supra* at 631-633.

ion, and especially Catholicism, as the instrument of Satan. No crowd was drawn, but two of the hearers testified that they were close to violence. *Id.* The Court reversed the defendant's conviction on a count for commission of the common-law offense of inciting a breach of the peace, stating:

> Cantwell's conduct, in the view of the court below, considered apart from the effect of his communication upon his hearers, did not amount to a breach of the peace. One may, however, be guilty of the offense if he commits acts or makes statements likely to provoke violence and disturbance of good order, even though no such eventuality be intended. Decisions to this effect are many, but examination discloses that, in practically all, the provocative language which was held to amount to a breach of the peace consisted of profane, indecent, or abusive remarks directed to the person of the hearer. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.

*     *     *

> In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration . . . and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy. [*Id.* at 309-310.]

In this case, defendant's words had no tendency to incite an imminent breach of the peace. Defendant's message was in the form of grotesque exaggeration that was more likely to frighten children than to

impart information. However, the children's mere fright, though an unfortunate consequence of defendant's speech, did not rise to the level of violence or a disturbance of public order nor was such a result likely. If the purpose of the prohibition on fighting words is to preserve public safety and order, then unprotected fighting words do not encompass words that would emotionally upset children who are unlikely to retaliate. Therefore, on the basis of the limited facts of this case, we find that the ordinance was unconstitutionally applied to defendant.

### VI. QUASHING OF SUBPOENAS

Defendant also argues that the trial court erred in quashing certain subpoenas. We conclude that this issue is not properly before us. A no contest plea waives all defenses except those that implicate the state's authority to bring the defendant to trial, i.e., jurisdictional defenses. *People v Lannom*, 441 Mich 490, 493-494; 490 NW2d 396 (1992). Whether a subpoena was properly quashed is not such a defense. Although defendant tendered a conditional plea, it was conditioned only on defendant's preserving his constitutional challenges. A conditional plea preserves only those defenses specifically mentioned on the record. See MCR 6.301(C)(2). Accordingly, because defendant did not specifically preserve the question whether the trial court properly quashed the subpoenas, this issue was waived by defendant's plea. *People v Riley*, 465 Mich 442, 449; 636 NW2d 514 (2001); see also *People v Carter*, 462 Mich 206, 215-220; 612 NW2d 144 (2000).

Reversed.